## *In re* MOILES

Docket No. 314970. Submitted August 6, 2013, at Grand Rapids. Decided
October 29, 2013, at 9:00 a.m. Reversed in part and remanded at
495 Mich 944.

Petitioner, Tasha Weeks, filed an action in the Mecosta Circuit Court,
Family Division, seeking an order revoking respondent, Kenneth
L. Moiles's acknowledgment of parentage of the minor child, EM.
The parties were romantically involved for seven years. They
separated in 2006 and the child was born in 2007. The parties had
at some point resumed their relationship, Moiles signed an ac-
knowledgment of parentage, and the parties' relationship again
ended in 2009. In 2012, Weeks asserted in the petition that the
child had been conceived during the time she and Moiles were
separated and that the child was not his biological child. The
circuit court, Marco Menezes, J., ordered the parties to permit
DNA analysis, which indicated there was a zero percent chance
that Moiles was the child's biological father. Weeks filed a motion
to revoke Moiles's acknowledgment of parentage and the court
heard testimony only from the lab technician who had analyzed
the DNA samples. The court granted Weeks's petition and revoked
Moiles's acknowledgment of parentage under MCL 722.1443(2),
finding that one or both parties knew or should have known that
Moiles was not the child's biological child when they signed the
acknowledgment and that it was a misrepresentation of a material
fact and was fraudulently executed by the two parties. The court
further found that there was clear and convincing evidence that
Moiles was not the child's biological father and revoked his
acknowledgment of parentage. Moiles appealed.

The Court of Appeals *held*:

1. The Paternity Act, MCL 722.711*et seq.*, the Acknowledg-
ment of Parentage Act, MCL 722.1001, *et seq.*, and the Revocation
of Paternity Act, MCL 722.1431 *et seq.*, serve the interrelated
purposes of establishing or disestablishing a child's paternity, are
*in pari materia*, are construed together as one law, and are read
reasonably and in context with each other.

2. Under MCL 722.1437, a child's mother, acknowledged fa-
ther, alleged father, or a prosecuting attorney may file an action to
revoke an acknowledgment of parentage within (1) three years

after the child's birth, (2) one year after the acknowledgment of parentage was signed, or (3) one year after the Revocation of Paternity Act, MCL722.1431 *et seq.*, went into effect, whichever is later. The affidavit supporting the petition must contain a statement of facts that establishes one of the following: (1) mistake of fact, (2) newly discovered evidence that by due diligence could not have been found before the acknowledgment was signed, (3) fraud, (4) misrepresentation or misconduct, or (5) duress in signing the acknowledgment. Under MCL 722.1443(2) a trial court may (1) revoke an acknowledgment of parentage, (2) set aside an order of filiation, (3) determine that a child was born out of wedlock, or (4) make a determination of paternity and enter an order of filiation. A trial court must order blood or tissue typing or DNA identification profiling in accordance with the Paternity Act, MCL 722.716, if the affidavit supporting the petition is sufficient. Looking to the Paternity Act for guidance, under MCL 722.716(5) and (6), the test results presumptively establish the child's paternity if there is a 99 percent or higher probability of paternity; either party may move for summary disposition on the petition if the presumption of paternity is established. MCL 722.1443(5) provides that the test results assist the trial court in making a determination but are not binding.

3. For purposes of MCL 722.1437(2)(d), the term "misrepresentation", as defined in Black's Law Dictionary, means the act of making a false or misleading assertion about something, usually with the intent to deceive. The definition of "misrepresentation," as established in the common-law context of fraudulent misrepresentation and innocent misrepresentation in contract cases, is not applicable to defining "misrepresentation" as used in the Revocation of Paternity Act because, in the common-law context, misrepresentation requires that it encompass the act of one party making a false representation that deceives the other party. The Legislature clearly intended that the term "misrepresentation" not include only the common-law definition, which would have required the misrepresentation to have been made to a party who signed the acknowledgment of parentage. Instead, MCL 722.1437(2)(d) only requires that (1) a misrepresentation was made, and (2) the circumstances of the misrepresentation were set forth in an affidavit signed by the person filing the action. The Legislature chose to not word the statute to require that the misrepresentation be made from one party to the other party. In this case, the trial court correctly determined that the acknowledgment of parentage was a misrepresentation of a material fact under MCL 722.1437(2)(d) because the acknowledgment was made under oath to the effect that Moiles was the child's biological father. While the Acknowledgment of Parentage Act does not prohibit

a child from being acknowledged by a man who is later determined not to be his or her biological child, the man's belief at the time of acknowledgment must have been honest. A man may not execute such an acknowledgment knowing the child is not his biological child because the acknowledgment creates the legal presumption that the man is the child's natural father. In this case, Moiles knew or should have known he was not the child's biological father because of the lack of contact with Weeks at the time of conception. Weeks's affidavit, which set forth the misrepresentation, supported revocation of the acknowledgment under MCL 722.1437(2)(d).

4. In the alternative, the trial court did not clearly err by concluding that the acknowledgment of parentage was executed fraudulently by Moiles and Weeks, as set forth in MCL 722.1437(2)(c). Moiles's acknowledgment that the child was his natural child was either knowingly false when made or recklessly made as a positive assertion because he knew that he was most likely not the child's natural father. In addition, although not binding on the court, the DNA results conclusively established that Moiles was not the child's biological father, which further supported the trial court's conclusion.

5. Under MCL 722.1443(2)(d), the trial court may make a determination of paternity and enter an order of filiation as provided for under MCL 722.717 of the Paternity Act. For purposes of MCL 722.1443(4), a court may refuse to enter an order setting aside a paternity determination or determining that a child was born out of wedlock, if the court finds evidence that the order would not be in the best interests of the child. Because an acknowledgment of parentage is not a paternity determination as that term is used in the Revocation of Paternity Act, the trial court did not err by concluding that the best-interest determination of MCL 722.1443(4) did not apply. A trial court is not required to conduct the best-interest analysis of MCL 722.1443(4) during a hearing to revoke an acknowledgment of parentage under MCL 722.1443(2)(a) because, by its own language, MCL 722.1443(4) applies only to paternity determinations brought under MCL 722.717 and determinations that a child was born out of wedlock.

6. The Court of Appeals declined to address Moiles's unpreserved due-process challenges because he failed to show plain error affecting his substantial rights.

Affirmed.

WHITBECK, P.J., concurring in part and dissenting in part, agreed with the majority that the trial court did not need to make a best-interest determination under MCL 722.1443(4) when revoking an acknowledgment of parentage and agreed for different

reasons that it was appropriate to decline consideration of Moiles's unpreserved due-process challenges. Judge WHITBECK would have concluded that the trial court clearly erred when it found that Moiles's action in signing the acknowledgment of parentage when he was not the child's biological child was a fraud or misrepresentation under MCL 722.1437. He reasoned that the act does not prohibit a child from being acknowledged by a man that is not his or her biological father and noted that whether Moiles knew or should have known he was not the child's biological father, Moiles did not represent that he was the biological father of the child. Judge WHITBECK did not believe the trial court followed the proper procedure under MCL 722.1437 for revoking the acknowledgment of parentage. He would have reversed the trial court's order and remanded for the trial court to determine if the parties made a misrepresentation or committed fraud consistent with the legal meaning of those words, not as defined by a dictionary.

1. REVOCATION OF PATERNITY ACT — ACKNOWLEDGMENT OF PARENTAGE ACT — PATERNITY ACT — IN PARI MATERIA.

The Paternity Act, MCL 722.711 *et seq.*, the Acknowledgment of Parentage Act, MCL 722.1001, *et seq.*, and the Revocation of Paternity Act, MCL 722.1431 *et seq.*, serve the interrelated purposes of establishing or disestablishing a child's paternity, are *in pari materia*, are construed together as one law, and are read reasonably and in context with each other.

2. CHILD AND PARENT — ACKNOWLEDGMENT OF PARENTAGE — REVOCATION OF PATERNITY — BEST-INTEREST ANALYSIS.

A trial court is not required to conduct the best-interest analysis of MCL 722.1443(4) during a hearing to revoke an acknowledgment of parentage under MCL 722.1443(2)(a) because, by its own language, MCL 722.1443(4) applies only to paternity determinations brought under MCL 722.717 and determinations that a child was born out of wedlock.

3. CHILD AND PARENT — REVOCATION OF PATERNITY — MISREPRESENTATION — ACKNOWLEDGMENT OF PARENTAGE — HONEST BELIEF.

Under MCL 722.1437(2)(d) and MCL 722.1443(2)(a), a party's acknowledgment of parentage of a child may be revoked on the basis of misrepresentation if it is proven that (1) a misrepresentation was made, and (2) the circumstances of the misrepresentation were set forth in an affidavit signed by the person filing the action; the misrepresentation does not have to made by one party to the other party; the Acknowledgment of Parentage Act, MCL 722.1001 *et seq.*, does not prohibit a child from being acknowledged

by a man who is later determined to not be his or her biological child but the man's belief at the time of acknowledgment must have been honest or it is grounds for revocation of paternity on the basis of misrepresentation under MCL 722.1437(2)(d).

*Lobert & Fransted, P.C.* ( by *Emily W. Fransted*) for Tasha Weeks.

*Samuels Law Office* (by *Stacy Flanery*) for Kenneth L. Moiles.

Before: WHITBECK, P.J., and OWENS and M. J. KELLY, JJ.

OWENS, J. Respondent, Kenneth L. Moiles, appeals as of right the circuit court's order granting the motion of petitioner, Tasha Weeks, to revoke Moiles's acknowledgment of parentage of the minor child, EM (the child). Because we conclude that the trial court complied with the statute in question, the Revocation of Paternity Act (the Act),[1] we affirm.

I. FACTS

Moiles and Weeks were romantically involved for seven years, but ended their romantic involvement in December 2009. Weeks testified that the parties had temporarily separated in 2006 and the child was born in 2007. Even though both parties were aware that there was a possibility that Moiles was not the biological father of the child, Moiles signed an acknowledgment of parentage, affirming under penalty of perjury that he was the child's natural father. Under the Acknowledgment of Parentage Act,[2] an acknowledgment establishes a child's paternity without requiring further adjudica-

[1] MCL 722.1431 *et seq.*
[2] MCL 722.1001 *et seq.*

tion.[3] The parties had a child in 2009, KNM, and they do not dispute that Moiles is the natural father of KNM.

In May 2011, Moiles was involved in a Child Protective Services (CPS) investigation concerning bruises to his child, KAM, from a previous marriage. Moiles pleaded to jurisdiction in that case. Moiles was also involved in another CPS investigation in October 2011. In the trial that followed, Weeks testified that in October 2011, Moiles had returned KNM to her home with a bruise on his face. A jury eventually found that the trial court had jurisdiction over the child and KNM. Services in that case remained ongoing through December 2012.

In June 2012, the Michigan Legislature passed the Revocation of Paternity Act (the act),[4] which provides in part a means by which a trial court can revoke an acknowledgment of parentage.[5] The act allows a mother, acknowledged father, alleged father, or prosecuting attorney to move to revoke an acknowledgment of parentage within three years after the child's birth, within one year after the acknowledgment of parentage was signed, or within one year after the effective date of the act, whichever is later.[6]

In August 2012, Weeks filed a petition, seeking to revoke Moiles's acknowledgment of the child's parentage. Weeks asserted that the child was conceived during the time that she and Moiles were separated and that the child was not his biological child. A DNA analysis indicated a zero percent chance that Moiles was the child's biological father.

---

[3] MCL 722.1004.

[4] MCL 722.1431 *et seq.*

[5] MCL 722.1443(2)(a).

[6] MCL 722.1437(1).

In December 2012, Weeks petitioned the trial court to suspend Moiles's parenting time on the basis that his oldest son had sexually abused the child. Moiles testified that he did not believe that the allegation was true, and that he instead believed that Weeks had manufactured it "so that she can keep her parenting time."

On January 12, 2013, Weeks provided the trial court with a brief in support of her petition requesting the revocation of Moiles's acknowledgment of parentage. On January 22, 2013, the trial court heard Weeks's petition to revoke Moiles's acknowledgment of parentage. The trial court heard testimony solely from the technician who had analyzed the DNA samples. Moiles contended that the act was not applicable to this case because the parties had not made any misrepresentations to each other. Moiles also contended that the trial court must consider the child's best interests before revoking his paternity.

The trial court found that the act was unambiguous and applied to Moiles's case because one or both parties knew or should have known that he was not the child's biological father when they signed the acknowledgment. Thus, the trial found that the acknowledgment "was a misrepresentation of the material fact and was executed fraud[ul]ently by the two parties." The trial court further found by clear and convincing evidence that Moiles was not the child's "biological father," and revoked the acknowledgment of parentage.

## II. STANDARD OF REVIEW

The Revocation of Paternity Act does not provide a standard by which this Court should review the trial court's decision. Generally, this Court reviews for clear error the trial court's factual findings in proceedings involving the rights of children, and reviews de novo

issues of statutory interpretation and application.[7] The trial court has committed clear error when this Court is definitely and firmly convinced that it made a mistake.[8]

Consistently with the general standards of review in actions involving the care and custody of children, we conclude that this Court should review for clear error the trial court's findings concerning the sufficiency of an affidavit and whether there is clear and convincing evidence that a man is not a child's father under MCL 722.1437(3). We also conclude that we should review de novo the trial court's conclusions of law.

III. INTERPRETATION OF THE REVOCATION OF PATERNITY ACT

A. STATUTORY LANGUAGE

The act allows the trial court to (1) revoke an acknowledgment of parentage, (2) set aside an order of filiation, (3) determine that a child was born out of wedlock, or (4) make a determination of paternity and enter an order of filiation.[9] Pertinent to this case, the act provides that MCL 722.1437 "governs an action to set aside an acknowledgment of parentage."[10]

Under MCL 722.1437, a child's mother, acknowledged father, alleged father, or a prosecuting attorney may file an action to revoke an acknowledgment of parentage within (1) three years after the child's birth, (2) one year after the acknowledgment of parentage was signed, or (3) one year after the act went into effect, whichever is later.[11] The affidavit supporting the peti-

---

[7] MCR 3.977(K); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

[8] *In re Mason*, 486 Mich at 152.

[9] MCL 722.1443(2).

[10] MCL 722.1435.

[11] MCL 722.1437(1).

tion must contain a statement of facts that establishes one of five grounds to revoke an acknowledgment:

> (a) Mistake of fact.
>
> (b) Newly discovered evidence that by due diligence could not have been found before the acknowledgment was signed.
>
> (c) Fraud.
>
> (d) Misrepresentation or misconduct.
>
> (e) Duress in signing the acknowledgment.[12]

If the trial court finds that the affidavit is sufficient, it must "order blood or tissue typing or DNA identification profiling" in accordance with the Paternity Act.[13] Under the section of the Paternity Act to which the Revocation of Paternity Act refers, the results of a blood, tissue, or DNA test presumptively establish the child's paternity if there is a 99 percent or higher probability of paternity.[14] If the testing establishes a presumption of paternity, "either party may move for summary disposition under the court rules."[15] Under the Revocation of Paternity Act, the purpose of the blood typing, tissue typing, or DNA identification profiling is "to assist the court in making a determination," but the results "are not binding on a court in making a determination under [the Act]."[16]

### B. PRINCIPLES OF STATUTORY INTERPRETATION

This case requires this Court to interpret the Revocation of Paternity Act. When interpreting a statute,

---

[12] MCL 722.1437(2).

[13] MCL 722.1437(3); MCL 722.1443(5); see MCL 722.716.

[14] MCL 722.716(5).

[15] MCL 722.716(6).

[16] MCL 722.1443(5).

our goal is to give effect to the intent of the Legislature.[17] The language of the statute itself is the primary indication of the Legislature's intent.[18] This Court enforces unambiguous statutes as written.[19] We must read the statute as a whole and may not read statutory provisions in isolation.[20] This Court reads the provisions of statutes "reasonably and in context," and reads subsections of cohesive statutory provisions together.[21]

Generally we construe statutory terms according to their plain and ordinary meanings.[22] However, if the Legislature has chosen words that " 'have acquired a peculiar and appropriate meaning in the law,' " we construe those terms according to such peculiar and appropriate meanings.[23] Thus, "when the Legislature chooses to employ a common-law term without indicating an intent to alter the common law, the term will be interpreted consistent with its common-law meaning."[24] This is true even when the common-law meaning is from another area of the law.[25]

This Court construes the Acknowledgment of Parentage Act and the Paternity Act *in pari materia*.[26] Statutes *in pari materia* relate to the same subject or share a

---

[17] *United States Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009).

[18] *Id.*

[19] *Id.* at 12-13.

[20] *Robinson v Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010).

[21] *McCahan v Brennan*, 492 Mich 730, 739; 822 NW2d 747 (2012).

[22] *In re Bradley Estate*, 494 Mich 367, 377; 835 NW2d 545 (2013).

[23] *Id.*, quoting MCL 8.3a.

[24] *In re Bradley Estate*, 494 Mich at 377.

[25] *Ford Motor Co v Woodhaven*, 475 Mich 425, 439; 716 NW2d 247 (2006).

[26] *Sinicropi v Mazurek*, 273 Mich App 149, 156-157; 729 NW2d 256 (2006); *Aichele v Hodge*, 259 Mich App 146, 161; 673 NW2d 452 (2003).

common purpose, and we must read and construe them together as one law.[27] Like the Acknowledgment of Parentage Act and the Paternity Act, the Revocation of Paternity Act deals with the same subject matter—the determination of a child's legal father—and these acts all serve the interrelated purposes of establishing or disestablishing a child's paternity. Therefore, we will construe these statutes *in pari materia.*

### C. MISREPRESENTATION UNDER MCL 722.1437(2)(d)

Moiles contends that the trial court improperly determined that the Revocation of Paternity Act applied to this case on the grounds of misrepresentation because the type of misrepresentation that Weeks alleged was not a misrepresentation under the act. We disagree with his contention.

The act does not define "misrepresentation." We must read statutes in context to discern the Legislature's intent.[28] In this case, the context in which the Legislature has used the word "misrepresentation" is in a list with other common-law legal terms, including fraud, mistake of fact, and duress. We conclude that the Legislature meant to use the more particular, legal meanings of these terms. We are also not blind to the fact that an acknowledgment of parentage is a legally binding, signed writing. This further buttresses our conclusion that the Legislature meant to use the common-law legal meaning of the word "misrepresentation," as it is understood in the context of other legally binding writings. Because there is no indication that the Legislature intended to alter the common-law meaning of "misrepresentation," we examine Michi-

---

[27] *Sinicropi,* 273 Mich App at 157.

[28] *McCahan,* 492 at 739.

gan's common law to determine its meaning.[29] More-
over, because we conclude that "misrepresentation" is a
legal term, we may also turn to a legal dictionary to
determine its meaning.[30]

Black's Law Dictionary defines "misrepresentation"
as "[t]he act of making a false or misleading assertion
about something, usu. with the intent to deceive."[31]

In the common law, the word "misrepresentation" is
typically discussed in the context of fraudulent and
innocent misrepresentations, as defenses to contracts.[32]
In the context of contracts, the elements of fraudulent
misrepresentation are (1) a party made a material
misrepresentation; (2) the representation was false; (3)
when the party made the representation, he or she
either knew it was false or made it recklessly, without
any knowledge of its truth and as a positive assertion;
(4) the party making the misrepresentation intended
that the other party act on it; (5) the other party acted
in reliance on it; and (6) the other party was injured.[33]

An innocent misrepresentation is different from a
fraudulent misrepresentation.[34] The elements of inno-
cent misrepresentation are (1) a representation in a
transaction between two parties; (2) that is false; (3)
that actually deceives the other party; (4) that the other
party relied on; (5) that the other party suffered damage
from; and (6) the party making the misrepresentation

---

[29] See *Ford Motor Co*, 475 Mich at 439-440.

[30] *Id.* at 440; see also *Bay Co Prosecutor v Nugent*, 276 Mich App 183,
190; 740 NW2d 678 (2007) (applying the Black's Law Dictionary defini-
tion to define the term "mistake of fact" as used in the Acknowledgment
of Parentage Act, MCL 722.1011(2)(a).

[31] Black's Law Dictionary (9th ed).

[32] *Titan Ins Co v Hyten*, 491 Mich 547, 555-556; 817 NW2d 562 (2012).

[33] *Id.* at 555.

[34] *United States Fidelity*, 412 Mich at 114.

benefitted from it.[35] An innocent misrepresentation is different from a fraudulent misrepresentation because the party making the misrepresentation need not be aware that the representation is false and need not intend the other party to act on it.[36] Also, with an innocent misrepresentation, the person making the misrepresentation must benefit from the other party's injury or damage.[37]

However, because the definitions of fraudulent and innocent misrepresentations both encompass the act of making a false representation that deceives another, we find that the Black's Law Dictionary definition is most helpful in the context of interpreting its meaning in MCL 722.1437(2)(d).[38]

Moiles argues that the misrepresentation had to be made from one party to another. Although in the context of contracts fraudulent and innocent misrepresentations are typically made from one party to another, in this context, there is no indication of a legislative intent for the term "misrepresentation" to only include misrepresentations made to a party signing the acknowledgment of parentage. The statute only requires that a misrepresentation was made and the circumstances of it are set forth in "an affidavit signed by the person filing the action."[39] Had the Legislature intended that the misrepresentation be made from one party to the other party, it could have so provided.[40]

---

[35] *Id.* at 116.

[36] *Id.* at 117.

[37] *Id.* at 118.

[38] This is consistent with how this Court previously defined "mistake of fact" as used in the statute.

[39] MCL 722.1437(2).

[40] See *Bay Co Prosecutor*, 276 Mich App at 189 ("We may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.") (quotation marks and citation omitted).

### D. APPLYING THE STANDARDS

We conclude that the trial court correctly determined that the acknowledgment of parentage "was a misrepresentation of the material fact." Alternatively, the trial court also correctly determined that the acknowledgment of parentage was "executed fraud[ul]ently by the two parties."

The trial court determined that the parties' representation was a misrepresentation because the "acknowledgment was made under oath to the effect that [Moiles] was the biological father of [the child]." We recognize that in *In re Daniels Estate*, we stated that "the Acknowledgment of Parentage Act does not prohibit a child from being acknowledged by a man who is not his or her biological father."[41] However, this statement did not refer to the situation in which a man knowingly executed a false acknowledgment of parentage. Rather, it referred to the situation in which a man honestly, but mistakenly, believed that he was the biological father of a child and signed an acknowledgment of parentage under such belief. This statement does not stand for the proposition that a man may execute a valid acknowledgment of parentage knowing he is not the child's biological father, particularly because signing the acknowledgment of parentage creates the legal presumption that the man is the child's natural father.[42] This is consistent with the purpose of the Acknowledgment of Parentage Act, which allows a man who honestly believes he is the natural father of a child born out of wedlock to sign an affidavit acknowledging such, rather than having to go through proceedings to establish paternity in circuit court.[43]

---

[41] See *In re Daniels Estate*, 301 Mich App 450, 457; 837 NW2d 1 (2013).

[42] MCL 722.1003(1).

[43] See MCL 722.1004.

When Moiles signed the affidavit of parentage form, he affirmed "under penalty of perjury" that he was the natural parent of the child.[44] Since the parties knew, or should have known due to the lack of contact at conception, that Moiles was possibly not the child's natural father, Moiles made a false statement when he signed the acknowledgment of parentage indicating that he was the child's natural father. This false statement deceived the child and the world, as it held Moiles out to the world as something he is uncontrovertibly not: the child's natural father. By falsely signing the acknowledgment of parentage, Moiles became fraudulently entitled to benefits to which he was not entitled, such as the child's companionship, possible public assistance benefits, potential child support, custody, or parenting time, inheritance benefits, and potential wrongful death benefits. Accordingly, the ground of misrepresentation, as alleged in Weeks's affidavit, was established to support revocation of the acknowledgment.

Alternatively, the trial court also did not err when it determined that there was a second ground to support revocation of the acknowledgment: fraud. The trial court also determined that the acknowledgment of parentage was "executed fraudulently by the two parties." "Fraud" also requires a party to make a representation that is false.[45] As previously discussed, Moiles signed the acknowledgment attesting "under penalty of perjury" that he was the child's natural father. However, because he knew that he was most likely not the

---

[44] Department of Community Health affidavit of parentage form, available at <http://www.michigan.gov/documents/Parentage_10872_7.pdf> (accessed September 23, 2013). The form also provides, "Alteration of this form or the making of false statements with the affidavit for the purposes of deception is a crime. (MCL 333.2894)"

[45] *Titan Ins Co*, 491 Mich at 555.

natural father, the acknowledgment was fraudulent, as it was either knowingly false or was made recklessly as a positive assertion.[46]

Additionally, although DNA test results are not binding on a court, the trial court may use the results "to assist the court in making a determination under [the Act]."[47] The DNA test ordered by the trial court conclusively established that Moiles was not the child's biological father. Therefore, the trial court's finding that the acknowledgment of parentage "was a misrepresentation of the material fact and was executed fraud[ul]ently by the two parties," was not clearly erroneous.

### E. BEST-INTEREST DETERMINATION UNDER MCL 722.1443

Moiles additionally contends that the trial court erred by failing to consider the child's best interests when determining whether to revoke his acknowledgment of parentage. We disagree.

MCL 722.1443 provides the procedures by which the trial court considers actions filed under the Revocation of Paternity Act and provides in part:

> (2) In an action filed under this act, the court may do any of the following:
>
> (a) Revoke an acknowledgment of parentage.
>
> (b) Set aside an order of filiation or a paternity order.
>
> (c) Determine that a child was born out of wedlock.
>
> (d) Make a determination of paternity and enter an order of filiation as provided for under section 7 of the paternity act, 1956 PA 205, MCL 722.717.

* * *

---

[46] *Id.*

[47] MCL 722.1443(5)

(4) A court may refuse to enter an order setting aside a
paternity determination or determining that a child is born
out of wedlock if the court finds evidence that the order
would not be in the best interests of the child. The court
shall state its reasons for refusing to enter an order on the
record.

Moiles contends that an acknowledgment of parentage
*is* a paternity determination because it establishes a
child's paternity. We disagree, and conclude that the trial
court correctly determined that an acknowledgment of
parentage is not a paternity determination as that term is
used in the statute, and therefore, that MCL 722.1443(4)
did not apply. An acknowledgment of parentage does
establish the paternity of a child born out of wedlock and
does establish the man as a child's natural and legal
father.[48] However, in MCL 722.1443(2)(d), the Legislature
expressly linked a "determination of paternity" to § 7 of
the Paternity Act. We conclude that the Legislature's use
of the phrase "paternity determination" in MCL
722.1443(4) specifically refers to a "determination of pa-
ternity" under MCL 722.717, and the resulting order of
filiation.[49]

When a statute expressly mentions one thing, it
implies the exclusion of other similar things.[50] In this
case, while MCL 722.1443 generally applies to any of
the actions listed in subsection (2), including the revo-
cation of an acknowledgment of parentage,[51] subsec-
tion (4) specifically addresses only paternity determina-
tions[52] and determinations that a child is born out of

---

[48] *Sinicropi*, 273 Mich App at 163; see MCL 722.1004.

[49] MCL 722.717(1).

[50] *Bradley v Saranac Community Sch Bd of Ed*, 455 Mich 285, 298; 565
NW2d 650 (1997).

[51] MCL 722.1443(2)(a).

[52] MCL 722.1443(2)(b).

wedlock.[53] These are only two of the four types of actions that the trial court may take under the Revocation of Paternity Act.[54] Had the Legislature wanted the trial court to make a determination of the child's best interests relative to revoking an acknowledgment of parentage, it could have included language to that effect. But it did not.

Therefore, we conclude that MCL 722.1443(4) did not require the trial court to make a best-interest determination before revoking Moiles's acknowledgment of parentage.

### IV. DUE PROCESS

Moiles raises several unpreserved due-process challenges that we decline to address because he has failed to show plain error affecting his substantial rights.[55]

### V. CONCLUSION

The trial court did not clearly err when it found that Moiles's action of signing an acknowledgment of parentage, knowing that he was possibly not the child's biological father, constituted a fraudulent execution of the acknowledgment and also contained a misrepresentation of a material fact (his parentage), under MCL 722.1437. In addition, the trial court did not err when it determined that it was not required to make a best-interests determination under MCL 722.1443(4) before revoking Moiles's acknowledgment of parentage.

We affirm.

M. J. KELLY, J., concurred with OWENS, J.

---

[53] MCL 722.1443(2)(c).

[54] MCL 722.1443(2).

[55] See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

WHITBECK, P.J., (*concurring in part and dissenting in part*). Respondent, Kenneth L. Moiles, appeals as of right the circuit court's order granting the motion of petitioner, Tasha Weeks, to revoke Moiles's acknowledgment of paternity of the minor child. I acknowledge at the outset that, as the old adage asserts, bad facts make bad law. This case certainly involves bad facts, particularly with respect to Moiles's alleged child abuse. But the question before us is not a factual one. It is purely a legal one, involving the interpretation of a statute. Because I would conclude that the trial court did not comply with the Revocation of Paternity Act,[1] I would reverse and remand.

I agree with the majority's statement of the facts in this case, and its statements of the standard of review and applicable law. Where I diverge from the majority's opinion is in its application of the law to the facts in this case. The majority concludes that when Moiles signed an acknowledgment of parentage acknowledging that he was the child's "natural father," he made a false statement because he was not the child's biological father. For the reasons below, I would conclude that (1) the terms biological and natural father are not interchangeable and (2) Moiles did not make a false statement when he signed the acknowledgment of parentage.

### I. MISREPRESENTATION UNDER MCL 722.1437(2)(d)

Moiles contends that the trial court improperly determined that the Revocation of Paternity Act applied to this case on the grounds of misrepresentation and fraud. I agree with his contention.

---

[1] MCL 722.1431 *et seq.*

Weeks urges this Court to look to the dictionary to determine what the Legislature meant by "misrepresentation." This Court may resort to a dictionary to determine a word's common meaning.[2] If the word "misrepresentation" stood alone in the statute, I might agree that the Legislature intended to give the word its common, dictionary meaning. But we must read statutes in context to discern the Legislature's intent.[3]

In this case, the context in which the Legislature has used the word "misrepresentation" is in a list with other common-law legal terms, including fraud, mistake of fact, and duress. I agree with the majority's conclusion that the Legislature meant to use the more particular, legal meanings of these terms, and its reasoning for so doing. I also agree with the majority's definitions of fraudulent and innocent misrepresentation. However, while recognizing that the Legislature used particular legal terms in the Revocation of Paternity Act, the majority concludes that the Black's Law Dictionary definition of misrepresentation is the most helpful tool in ascertaining the Legislature's intent in this context. I disagree.

## II. APPLYING THE STANDARDS

I would conclude that the trial court's determination that a misrepresentation or fraud occurred in this case was incorrect. Moiles contended that the type of misrepresentation that Weeks alleged he committed was not a misrepresentation under the act. Despite the parties' urging, the trial court did not delve into the meaning of the words "fraud" and "misrepresentation" as contemplated by the act. It is clear, however, that

---

[2] *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011).

[3] *McCahan v Brennan*, 492 Mich 730, 739; 822 NW2d 747 (2012).

both fraud and misrepresentation require a party to make a representation that is false.[4]

In this case, the trial court found that Moiles and Weeks both knew or should have known that Moiles was not the child's biological father. Therefore, it opined that the acknowledgment of paternity was a "misrepresentation of the material fact and was executed fraud[ul]ently by the parties." The trial court determined that the parties' representation was a misrepresentation because "acknowledgment was made under oath to the effect that [Moiles] was the *biological father* of [the child]." The trial court failed to recognize that, as stated in *In re Daniels Estate*, "the Acknowledgement of Parentage Act does not prohibit a child from being acknowledged by a man that is not his or her biological father."[5] While *In re Daniels Estate* involved a situation that was factually distinguishable from this case,[6] its statement of the law is accurate. The Acknowledgment of Parentage Act itself does not require a man to be the child's *biological* father to acknowledge the child,[7] nor does the affidavit of parentage form itself require the father to represent that he is the child's *biological* father.

Further, in the Revocation of Paternity Act, MCL 722.1431 *et seq.*, the Legislature stated that the blood, tissue, or DNA test is "to assist the court in making a determination under [the Act]" and that "[t]he results of the blood or tissue typing or DNA identification

---

[4] *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012); *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 117; 313 NW2d 77 (1981).

[5] *In re Daniels Estate*, 301 Mich App 450, 457; 837 NW2d 1 (2013).

[6] *Id.* at 451-452 (the child was born while the decedent and the child's mother were cohabitating and the decedent introduced the child as his son).

[7] MCL 722.1003.

profiling *are not binding on a court* in making a deter-
mination under [the Act]."[8] These statements further
buttress my conclusion that the Legislature was not
solely concerned about the child's *biological* relation-
ship to the man who signed the acknowledgment of
parentage.

Whether Moiles knew or should have known that he
was not the child's biological father, he did not repre-
sent that he was the *biological* father of the child on the
acknowledgment of parentage. Therefore, I would con-
clude that the trial court's finding that an "acknowl-
edgment was made under oath to the effect that
[Moiles] was the *biological father* of [the child]"[9] was
clearly erroneous. And, to the extent that the trial court
may have relied on that finding to determine that
Moiles misrepresented to the state his status relating to
the child, the trial court erred.

### III. CONCERNS ABOUT THE TRIAL COURT'S PROCEDURES

I also note my concern that, in this case, the trial
court departed from the procedures delineated in the
act. It first determined by a written order that DNA
testing was warranted. It then, in a subsequent pro-
ceeding, determined that a misrepresentation occurred
and revoked Moiles's acknowledgment of parentage.

I do not believe that this procedure was that which
the statute contemplates. MCL 722.1437(3) provides
that

> [i]f the court in an action for revocation under this section
> finds that an affidavit under [MCL 722.1437(2)] is suffi-
> cient, the court shall order blood or tissue typing or DNA
> identification as required by [MCL 722.1443(5)]. The per-

---

[8] MCL 722.1443(5).

[9] Emphasis added.

son filing the action has the burden of proving, by clear and convincing evidence, that the acknowledged father is not the father of the child.

The first sentence of this section is a classic "if-then" statement: *if* the trial court finds that the affidavit is sufficient, *then* it must order blood, tissue or DNA analysis. The second sentence provides that, after the testing, the person filing the action must prove by clear and convincing evidence that the acknowledged father is not the child's father. MCL 722.1445(5), to which MCL 722.1437(2) refers, in turn refers to the procedures under the MCL 722.716; a section which concerns blood, tissue, and DNA testing under the Paternity Act. MCL 722.716 provides that the blood, tissue, or DNA testing establishes a presumption of paternity.[10] The Paternity Act's procedures provide that after the results of the blood, tissue, or DNA analysis, a party may move for summary disposition.[11]

Given the grammar of MCL 722.1437(3), and keeping in mind our courts' general disapproval of leaving children in legal limbo,[12] I conclude that MCL 722.1437 contemplates a multi-step process for terminating an acknowledgment of parentage. First, the trial court must determine *if* the affidavit is sufficient and, if it finds that it is, *then* it must order blood, tissue, or DNA analysis. And second, the trial court must review the results of the blood, tissue, or DNA analysis and make a determination regarding whether to revoke the acknowledgment of parentage in a separate proceeding.

---

[10] MCL 722.716(5).

[11] MCL 722.716(6).

[12] See *In re Trejo Minors,* 462 Mich 341, 364; 612 NW2d 407 (2000) (favoring permanency for children).

IV. BEST-INTEREST DETERMINATION UNDER MCL 722.1443

I agree with the majority's well-reasoned conclusion that the trial court did not need to make a best-interest determination under MCL 722.1443(4) when revoking an acknowledgment of parentage.

V. DUE PROCESS

Because I would conclude that remand is necessary for compliance with the statute, I would also decline to consider Moiles's unpreserved due-process challenges.

VI. SUMMARY AND CONCLUSION

I would conclude that the trial court's determination to revoke an acknowledgment of parentage must be a two-step process—(1) the trial court must determine whether the affidavit is sufficient and, if necessary, order blood, tissue, or DNA testing, and (2) the trial court must then determine whether the petitioner has proven by clear and convincing evidence that the man is not the child's father.

For the reasons stated, I would conclude that the trial court clearly erred when it found that Moiles's action in signing an acknowledgment of parentage when he was not the child's biological child was a fraud or misrepresentation under MCL 722.1437. Therefore, I would reverse the trial court's order and remand for it to determine if the parties made a misrepresentation or committed fraud consistent with the legal meanings of those words.