# STATE OF MICHIGAN

# COURT OF APPEALS

---

CHRISTENA JOHNSON,

       Plaintiff-Appellee,

v

JERMARX MARSH,

       Defendant-Appellant,

and

LEO YOUNG and DEBRA YOUNG,

       Third Parties-Appellees.

UNPUBLISHED
October 1, 2015

No. 322037
Genesee Circuit Court
LC No. 03-247042-DM

---

Before: OWENS, P.J., and SAAD and GADOLA, JJ.

PER CURIAM.

Defendant Jermarx Marsh appeals the trial court's ruling that set aside its previous order granting summary disposition in his favor. For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case is a child custody dispute involving a twelve-year-old, DMY. The identity of DMY's father has been unclear since her birth, because her mother, plaintiff Johnson, had ongoing relationships with two men at the time of her conception: (1) defendant Marsh (with whom Johnson has three other children); and (2) Leo Young. Shortly after DMY's birth in 2003, Johnson and Young executed an affidavit of parentage that named Young as DMY's father.[1] Young and Johnson's relationship eventually soured, and the two separated. Young, however, kept custody of DMY, and he and his wife Debra have raised DMY since birth. They live in South Carolina.

---

[1] Marsh asserts that Johnson concealed DMY's birth from him, and that he did not learn of her existence until 2007.

-1-

In 2012, the Legislature enacted the Revocation of Paternity Act (ROPA), MCL 722.1431 *et seq.*, which grants a man who claims to be the father of a child standing to challenge paternity determinations in certain circumstances. MCL 722.1437(1). In August 2012, Marsh filed a ROPA action in the Genesee Circuit Court, and challenged DMY's paternity.

After a court-ordered paternity test confirmed Marsh as DMY's biological father, Marsh, in a motion for summary disposition, asked the court to: (1) revoke the 2003 acknowledgement of parentage that declared Young to be DMY's father; and (2) recognize Marsh as DMY's legal father. On January 8, 2014, the trial court granted Marsh's motion, revoked the 2003 affidavit of parentage, and issued an order of filiation that declared Marsh DMY's father.[2] Neither Johnson nor Young appealed the grant of summary disposition on these matters, likely because the order was merely the first stage of an ongoing legal proceeding.

The court followed its grant of summary disposition on these issues with a schedule for trial, which outlined a timeline for witness preparation, discovery, and trial date to determine custody of DMY.[3] The schedule also mandated that the parties attend a settlement conference prior to trial. In the interim, the trial court granted Johnson, Marsh, and the Youngs joint legal custody of DMY, and purportedly held that DMY would remain in the custody of the Youngs in South Carolina until the court determined a final custody arrangement.[4]

At the settlement conference, which took place on April 4, 2014, the trial court stated that its January 2014 order had been issued in error and contrary to the mandates of the ROPA. It

---

[2] In relevant part, the order stated:

> IT IS HEREBY ORDERED that the Affidavit of Parentage issued May 8, 2003 is revoked.

> IT IS FURTHER ORDERED that [Marsh] is the father of [DMY], born to [Johnson] on March 8, 2003, pursuant to the attached Order of Filiation.

> IT IS FURTHER ORDERED that no custody order shall be entered at this time as there is no pending custody case.

> IT IS FURTHER ORDERED that each party's request for attorney fees and/or costs is denied without prejudice. . . .

> IT IS FURTHER ORDERED that the trial date of January 14, 2014 is canceled. No additional issues are currently pending before the Court.

[3] The court issued the scheduling order on January 28, 2014.

[4] This grant of joint custody allegedly occurred on or about February 19, 2014. The record does not contain a copy of the order—rather, the order and its contents were merely referenced by the Youngs in their April 2014 motion to set aside the trial court's January 2014 grant of summary disposition to Marsh.

noted that it had granted Marsh's motion—which had the effect of (1) revoking the 2003 affidavit of parentage, and (2) issuing an order of filiation between Marsh and Young—*before* it considered DMY's best interests. The court explained that it did not consider DMY's best interests before acceding to Marsh's requests because, as of January 2014, Michigan law barred trial courts from considering the child's best interests at the outset of certain ROPA cases.[5] However, the trial court noted that this particular precedent had been reversed by the Michigan Supreme Court in February 2014, and that it was now free to consider DMY's best interests in the instant action.[6]

The trial court then asked DMY's guardian ad litem his thoughts on DMY's best interests. He replied that if the 2003 affidavit of parentage remained set aside, DMY should return to Michigan and live with her siblings.[7] He also stressed, however, that DMY had been doing well in South Carolina, and was very upset at the prospect of returning to Michigan. For this reason, the guardian ad litem recommended that DMY continue to live with the Youngs.

Thereafter, Young filed a motion for relief from the trial court's January 2014 order. In May 2014, the trial court: (1) granted Young's motion pursuant to MCR 2.612(C)(1)(f); (2) set aside the January 2014 order that revoked the 2003 acknowledgement of parentage and issued an order of filiation between Marsh and DMY; and (3) returned the case to evidentiary hearings to determine DMY's best interests. It specifically noted that Marsh's lawsuit had had a detrimental effect on DMY's well-being:

> [I]f ever extraordinary circumstances existed to set aside an order, it is in this case. The facts of this case are extraordinary in that a child over the age of ten has lived her entire life believing the Youngs were her parents, not having even been aware of [Marsh's] existence until the initiation of this case by [Marsh.] The reports of the Guardian ad Litem have indicated that by all accounts, [DMY] was a normal and happy child until these proceedings began. It is alleged that, due to these proceedings and the possibility of being removed from the Youngs, [DMY] suffers from depression and has expressed suicidal ideations to her counselor.

Accordingly, the court never held the scheduled trial to determine custody arrangements for DMY. On appeal, Marsh argues that the trial court erred when it set aside its January 2014 order, because the court did not have proper grounds to do so under MCR 2.612(C)(1). The Youngs ask us to uphold the order of the trial court.

## II. STANDARD OF REVIEW

---

[5] *In re Moiles*, 303 Mich App 59; 840 NW2d 790 (2013), rev'd in part and vacated in part by 495 Mich 944.

[6] See *In re Moiles*, 495 Mich at 944.

[7] It appears that DMY's siblings live with Marsh.

We review a trial court's decision to grant relief from a judgment or order pursuant to MCR 2.612(C)(1) for an abuse of discretion. *Peterson v Auto Owners Ins Co*, 274 Mich App 407, 412; 733 NW2d 413 (2007). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). Whether the trial court properly interpreted and applied statutes or court rules is a question of law, and is reviewed de novo. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

## III.  ANALYSIS

### A.  ROPA

As noted, the Michigan Legislature enacted ROPA in 2012[8] to permit "acknowledged fathers"—in other words, men who believe they are the biological fathers of a child—to challenge a child's paternity in certain circumstances. *Glaubius v Glaubius*, 306 Mich App 157, 165; 855 NW2d 221 (2014), lv gtd 497 Mich 929. To this end, ROPA empowers a trial court, within a time period enumerated in MCL 722.1437(1), to "(1) revoke an acknowledgement of parentage, (2) set aside an order of filiation, (3) determine that a child was born out of wedlock, or (4) make a determination of paternity and enter an order of filiation." *In re Moiles*, 303 Mich App 59, 66; 840 NW2d 790 (2013), rev'd in part and vacated in part by 495 Mich 944. The court may do so after a child's mother, acknowledged father, alleged father, or a prosecuting attorney[9] submits a petition that "establishes one of five grounds" to revoke any paternity-related documents:

> (4) An action for revocation under this section shall be supported by an affidavit signed by the person filing the action that states facts that constitute 1 of the following:
>
> (a) Mistake of fact.
>
> (b) Newly discovered evidence that by due diligence could not have been found before the acknowledgment was signed.
>
> (c) Fraud.
>
> (d) Misrepresentation or misconduct.
>
> (e) Duress in signing the acknowledgment. [MCL 722.1437(4).]

---

[8] The Legislature recently amended ROPA in 2014 PA 374, which became effective March 17, 2015. In the revision, the Legislature changed many of the numeric designations of subsections within the statute. For ease of reference, we use the current numeric designations and text of the statute unless otherwise noted.

[9] MCL 722.1437(1).

-4-

However, even if a petitioner demonstrates the above, a trial court may:

> refuse to enter an order setting aside a paternity determination, revoking an acknowledgment of parentage, determining that a genetic father is not a child's father, or determining that a child is born out of wedlock if the court finds evidence that the order would not be in the best interests of the child. [MCL 722.1443(4).[10]]

[10] Prior to the revisions of 2014 PA 374, MCL 722.1443(4) was less specific about what sorts of paternity-related documents a trial court could refuse to set aside if doing so was not in the child's best interests:

> A court may refuse to enter an order setting aside a paternity determination or determining that a child is born out of wedlock if the court finds evidence that the order would not be in the best interests of the child.

In *Moiles*, our Court construed the above language to mean that ROPA *only* permitted a trial court to make a finding on the child's best interests, and bar a revocation of these paternity documents, in two specific instances: (1) when the paternity document involved was a "paternity determination"; or (2) when the paternity document involved was a determination "that [the] child [was] born out of wedlock." *Moiles*, 303 Mich App at 75. Accordingly, in ROPA actions that involved an "acknowledgement of parentage"—such as the instant case—the trial court *could not* consider the child's best interests before revoking the wrongful acknowledgement of parentage.

*Moiles* was subsequently reversed by the Michigan Supreme Court, in a way that called the above interpretation of ROPA into doubt. See *In re Moiles*, 495 Mich 944. See also *Helton v Beaman*, 304 Mich App 97, 114–115; 850 NW2d 515 (2014) (K.F. KELLY, J., concurring) (explaining that *Moiles* was "wrongly decided" because ROPA always intended "a trial court [to] appropriately consider the relevant best-interest factors listed in MCL 722.1443(4) . . . when deciding whether to revoke an acknowledgement of parentage"). The validity of Judge K.F. KELLY's criticism of *Moiles* has been confirmed by the Michigan Supreme Court, which held, in its affirmance of *Helton*:

> We agree with the Court of Appeals authoring and concurring judges that *In re Moiles* . . . wrongly held that a trial court is not required to make a best interest determination under MCL 722.1443(4) in deciding whether to revoke an acknowledgement of parentage. For the reasons explained in [Judge K.F. KELLY's concurring opinion], we hold that an order revoking an acknowledgement of parentage constitutes an order "setting aside a paternity determination" and, therefore, is subject to a best interests analysis under MCL 722.1443(4). [*Helton v Beaman*, 497 Mich 1001; 861 NW2d 621 (2015).]

Moreover, as noted above, the Legislature subsequently amended ROPA in 2014 PA 374 to expressly permit a trial court to determine the best interests of the child in ROPA actions that

MCL 722.1443(4) then enumerates specific factors that a trial court may take into consideration when it determines a child's best interests in ROPA actions:

(a) Whether the presumed father is estopped from denying parentage because of his conduct.

(b) The length of time the presumed father was on notice that he might not be the child's father.

(c) The facts surrounding the presumed father's discovery that he might not be the child's father.

(d) The nature of the relationship between the child and the presumed or alleged father.

(e) The age of the child.

(f) The harm that may result to the child.

(g) Other factors that may affect the equities arising from the disruption of the father-child relationship.

(h) Any other factor that the court determines appropriate to consider. [MCL 722.1443(4).]

As such, ROPA explicitly permits trial courts, if they so choose, to consider the best interests of the child in all actions brought under the ROPA—including actions, like the instant case, brought before the revisions of 2014 PA 374. *Helton v Beaman*, 497 Mich 1001; 861 NW2d 621 (2015). See also *Paul v Wayne Co Dept of Pub Servs*, 271 Mich App 617, 620; 722 NW2d 922 (2006) ("[g]enerally, judicial decisions are given full retroactive effect, i.e., they are applied to all pending cases in which the same challenge has been raised and preserved").

B. MCR 2.612(C)(1)(F)

At the outset, we must note that this appeal does not involve substantive determinations as to: (1) whether Marsh submitted an affidavit showing Johnson's misconduct per MCL 722.1437(4); and (2) DMY's best interests. Rather, this case concerns the procedural question of whether the trial court properly set aside its January 2014 order under MCR 2.612(C)(1)(f). It is apparent that the trial court acted appropriately when it did so.

MCR 2.612(C)(1)(f) states that:

---

seek to invalidate "acknowledgement[s] of parentage." This further confirms the Legislature's intent to permit the trial court to make best interests determinations in such circumstances.

-6-

On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

* * *

(f) Any other reason justifying relief from the operation of the judgment.

To set aside a judgment under MCR 2.612(C)(1)(f), a court must find that: "(1) the reason for setting aside the judgment must not fall under [MCR 2.612(C)(1)(a) through (e)], (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice." *King v McPherson Hosp*, 290 Mich App 299, 304; 810 NW2d 594 (2010) (citation omitted). Further, "although relief under subrule (C)(1)(f) is the widest avenue for relief under this court rule, it nonetheless requires 'the presence of both extraordinary circumstances and a demonstration that setting aside the judgment will not detrimentally affect the substantial rights of the opposing party.' " *Id.* at 305.

In almost all circumstances, "relief from judgment under MCR 2.612(C)(1)(f) is inappropriate where a party has not sought appellate review of a trial court's final order and the basis for relief from judgment is a subsequent appellate decision in a different case." *Farley v Carp*, 287 Mich App 1, 8; 782 NW2d 508 (2010). This is because interests of finality and fairness mandate that a judgment, once issued and final, must definitely end the litigation and grant each party repose. See *Rose v Rose*, 289 Mich App 45, 58; 795 NW2d 611 (2010).

## C.  APPLICATION

Under the court rule and case law detailed above, Marsh argues that the interests of finality and fairness require reversal of the trial court's decision to set aside its January 2014 order. The practical effect restoring the order would be the: (1) revocation of the 2003 affidavit of parentage; (2) issuance of an order of filiation between Marsh and DMY; and (3) remand of the proceedings for trial, at which the court would determine custody arrangements between Johnson, Marsh, and the Youngs.

In most civil litigation contexts, MCR 2.612(C)(1)(f) would require us to reject a party's attempt to set aside a grant of summary disposition—even a grant of summary disposition that, as here, merely caused the transition from one stage of litigation to the next. But this is a special, highly unusual case where such a rigid interpretation of MCR 2.612(C)(1)(f) would cause substantial injustice to a minor, who, though not a party to this litigation, is the person that Michigan law is designed to protect and who is most affected by the ruling in this case. Accordingly, Marsh's appeal must be rejected for four reasons, which are limited to the peculiar facts of this case.

First, despite Marsh's assertions to the contrary, it is misleading to regard the January 2014 order as a final judgment, in a way that a grant of summary disposition in contract or property dispute would be. Rather, the January 2014 order merely moved the litigation to a new stage in the proceedings—namely, a settlement conference and potential trial to determine custody of DMY—as evinced by the trial schedule issued by the court in that same month. The

January 2014 order, then, did not end the litigation—it simply advanced the litigation. Moreover, the trial court reversed this order within four months of its issuance, *in the course of ongoing proceedings in the same case*. Marsh's argument overlooks these facts, which make his appeals to finality and repose ring hollow, because the January 2014 order *did not* grant him finality and repose.

Second, the genesis of the trial court's ultimate decision to set aside its January 2014 order lies with *the trial court*—not the Youngs. As noted, in the midst of the April 2014 custody proceedings, the trial court discovered that the interpretation of ROPA on which it (1) based the January 2014 order and (2) advanced the case to a custody trial was now void. As such, the court, in the interests of the minor child, quite sensibly invited the Youngs to file a motion to set aside the January 2014 order, so that the court could consider DMY's best interests before granting Johnson some form of parental rights.

This action—which is the source Johnson's appeal—bears no resemblance to the conduct MCR 2.612(C)(1)(f) aims to prevent: namely, recalcitrant parties who lose a case, fail to appeal, and then seek a second bite at the apple long after the suit has been concluded. Rather, it is akin to the judge who changes his mind on an earlier provisional ruling in the middle of trial, because he realizes the relevant law has changed in the interim. In other words, the behavior MCR 2.612(C)(1)(f) was designed to prevent—party-initiated attempts to relitigate a case—does not exist in *this* case, where a judge, essentially on her own motion, attempted to correct a mistake.

Third, this suit is not everyday civil litigation—it is litigation that involves custody of a child. The most important party to this lawsuit is a *non-party*: DMY. In cases that involve the custody of children, a court must consider, above all else, the *child's* interests and needs, not only the parent's wishes and desires. *Helton*, 304 Mich App at 119-120 (opinion of K.F. KELLY, J.). Accordingly, the question that MCR 2.612(C)(1)(f) would have us ask—whether the "parties" are harmed by reversing a "final order"—is not the question we should be asking in this case. When parties litigate over custody of a child, a court must not only adjudicate the parties' rights, but also insure that the *child's* interests are protected and not harmed by this adjudication. In sum, because MCR 2.612(C)(1)(f) is a rule that protects "parties" to litigation, it is inappropriate to strictly apply the rule in a child-custody action, where the most important individual involved in the suit is not a party.

Here, it is apparent from the record that DMY does not want to leave the Youngs and her home in South Carolina, where she has lived most of her life. To protect DMY, the trial court clearly should consider her best interests *before* holding custody proceedings. Because the law at the time of the January 2014 order barred the trial court from considering DMY's best interests, the trial court sensibly and appropriately set aside this order. By insisting that MCR 2.612(C)(1)(f) requires the reinstatement of the January 2014 order and the continuance of the custody proceedings, Young essentially asks us to place *his* rights and interests over those of DMY.

Finally, Marsh's "substantial rights" were not "detrimentally affected" by the trial court's decision to set aside the January 2014 grant of summary disposition. Marsh is *negatively* affected by the revocation of the order of filiation and reinstatement of the 2003 acknowledgement of parentage. The end result of each is that there is no longer a near certainty

he will have some right to parent DMY—indeed, depending on the outcome of the best interests hearing, it is possible that he may have *no* right to parent DMY. But the result of the best interests hearing is within Marsh's control. It provides him with ample opportunity to demonstrate that it is in DMY's best interests to be taken away from the Youngs and placed in his care. Stated another way, Marsh will have the ability to gain partial custody of DMY—the same outcome available to him before the trial court set aside the January 2014 grant of summary disposition—if he can show that granting him parental rights is in DMY's best interests.

In closing, we note that our holding in no way favors the Youngs at Marsh's expense. Again, the interests of Johnson, the Youngs, and Marsh are of secondary importance in this case. It is DMY's interests that are paramount, and her interests are what our ruling protects.

The trial court, pursuant to MCR 2.612(C)(1)(f) correctly found that (1) "the reason for setting aside" the January 2014 order did not "fall under [MCR 2.612(C)(1)(a) through (e),"[11] (2) Marsh's "substantial rights" would not be "detrimentally affected" if the order was set aside, and (3) "extraordinary circumstance[s]," namely the fact that this case involves the custody of a child, warranted the rescission of the order. *King*, 290 Mich App at 304. We therefore affirm the ruling of the trial court, and remand for the court to hold a best interests hearing.

Affirmed.

/s/ Donald S. Owens
/s/ Henry William Saad

---

[11] The trial court properly noted that it was not proper for it to set aside its earlier grant of summary disposition to Marsh pursuant to MCR 2.612(C)(1)(e), because that subrule does not authorize such action where a case on which the earlier grant rely has been overruled by subsequent case law. See *Kidder v Ptacin*, 284 Mich App 166, 170; 771 NW2d 806 (2009).