# STATE OF MICHIGAN

# COURT OF APPEALS

ROY LAWRENCE SHARPE,

      Plaintiff-Appellant,

v

REBECCA HUGUELET,

      Defendant-Appellee,

and

COREY ALAN BEEBE,

      Intervenor-Appellee.

UNPUBLISHED
May 29, 2018

No. 340569
Midland Circuit Court
LC No. 16-003329-DC

Before: MURRAY, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals as of right the circuit court order granting the motion of intervenor to revoke plaintiff's paternity to the minor child, and to recognize intervenor as the child's father. We affirm.

## I. FACTUAL BACKGROUND

On February 16, 2016, plaintiff filed a complaint for custody and parenting time of a child allegedly born to him and defendant in 2011. The parties were never married but, according to plaintiff, he and defendant were attempting to have a child when defendant became pregnant. Defendant denied that she and plaintiff were actively attempting to have a child, but acknowledged that she was not trying to prevent pregnancy. However, unknown to plaintiff, defendant had engaged in a sexual relationship with intervenor shortly before she became pregnant. Intervenor testified that he found out that defendant was pregnant three or four months later, but defendant and intervenor both testified that defendant denied that the child was intervenor's.

Years later, when the child was four years old, intervenor saw a picture of the child on Facebook and again questioned defendant regarding whether the child was his. Defendant continued to deny the possibility that intervenor might be the child's father. Intervenor

-1-

eventually persuaded defendant to allow for a paternity test. In January 2016, the test result indicated that there was a 99.99% probability that intervenor was the child's father.

Intervenor thus moved to intervene in the custody action between plaintiff and defendant, and intervenor filed a motion for an extension of time to allow him to seek revocation of plaintiff's paternity. The court held intervenor's motion in abeyance pending the results of a court-ordered DNA test, which also established that intervenor — not plaintiff — was the child's biological father. While the court was considering intervenor's motion, defendant was arrested for using methamphetamine and the Department of Health and Human Services (DHHS) removed the child from defendant's home. Defendant executed a power of attorney that named intervenor as the child's custodian, and DHHS placed the child with intervenor, though the child still had parenting weekends with plaintiff.

Ultimately, the circuit court held a best-interest hearing. After the hearing, the court determined that it would be in the child's best interests for it to revoke plaintiff's acknowledgment of parentage and to declare intervenor the child's legal father. Plaintiff now appeals.

## II. STANDARD OF REVIEW

This Court reviews the lower court's factual findings in a case concerning the Revocation of Paternity Act for clear error. *Jones v Jones*, 320 Mich App 248, 253; 905 NW2d 475 (2017). The court has committed clear error when this Court is "definitely and firmly convinced that it made a mistake." *Id*. (quotation marks and citation omitted). This Court reviews de novo the lower court's "interpretation and application of statutory provisions." *Id*.

## III. EXTENSION OF TIME

Plaintiff argues that the circuit court erred by both holding a best-interest hearing before determining that an extension of time would be in the child's best interests, and by determining that intervenor's affidavit stated grounds that warranted granting him an extension of time to file his petition to revoke plaintiff's paternity.

As an initial matter, we conclude that plaintiff's arguments are only partially preserved. An issue is preserved if it was raised before and decided by the lower court. *Grimes v Van Hook-Williams*, 302 Mich App 521, 537; 839 NW2d 237 (2013). Plaintiff raised his arguments regarding the merits of intervenor's extension motion in his motion for summary disposition. However, plaintiff did not argue that the court should not hold a hearing until after it determined the merits of intervenor's motion for an extension. To the extent that plaintiff argues that the circuit court erred by finding that misrepresentation provided grounds to grant intervenor's motion for extension, this issue is preserved because it was raised before and decided by the lower court.

First, plaintiff argues that the circuit court erred by determining that intervenor's affidavit stated grounds that warranted granting him an extension of time to file his petition to revoke plaintiff's paternity because the Court failed to recognize any newly discovered evidence that by due diligence could have been found earlier. We disagree.

The Acknowledgment of Parentage Act, MCL 722.1001 *et seq*., grants a man who executes an affidavit of parentage the status of a child's natural and legal father. *Sinicropi v Mazurek*, 273 Mich App 149, 152; 729 NW2d 256 (2006). The Revocation of Paternity Act allows the trial court to (1) revoke an acknowledgment of parentage, (2) determine a genetic father is not a child's father, (3) set aside an order of filiation, (4) determine that a child was born out of wedlock, or (5) make a determination of paternity and enter an order of filiation. MCL 722.1443(2). Generally, a child's mother, acknowledged father, alleged father, or a prosecuting attorney may file an action to revoke an acknowledgment of parentage within three years after the child's birth, one year after the acknowledgment of parentage was signed, or one year after the act went into effect. MCL 722.1437(1). However, "[a] court may extend the time for filing an action or motion under this act." MCL 722.1443(12). If a party requests an extension, they must meet the following requirements:

> A request for extension shall be supported by an affidavit signed by the person requesting the extension stating facts that the person satisfied all the requirements for filing an action or motion under this act but did not file the action or motion within the time allowed under this act because of 1 of the following:
>
> (a) Mistake of fact.
>
> (b) Newly discovered evidence that by due diligence could not have been found earlier.
>
> (c) Fraud.
>
> (d) Misrepresentation or misconduct.
>
> (e) Duress. [MCL 722.1443(12).]

If the court finds that the party's affidavit under MCL 722.1443(12) is sufficient, it "may allow the action or motion to be filed and take other action the court considers appropriate." MCL 722.1443(13). Additionally, the party requesting an extension must prove, "by clear and convincing evidence, that granting relief under this act will not be against the best interests of the child considering the equities of the case." MCL 722.1443(13). Plaintiff takes issue with only the trial court's failure to recognize evidence that could have purportedly been discovered earlier through the exercise of due diligence. However, an extension may be granted upon a showing of only *one* of the bases set forth in MCL 722.1443(12); ( "A request for extension shall be supported by an affidavit . . . stating facts that the person . . . did not file the action or motion within the time allowed under this act because of 1 of the following."). And the trial court properly found that a misrepresentation was made.

A misrepresentation is "the act of making a false or misleading assertion about something, [usually] with the intent to deceive." *In re Moiles*, 303 Mich App 59, 70; 840 NW2d 790 (2013), rev'd in part on other grounds by 495 Mich 944 (2014) (quotation marks, alterations, and citation omitted.) For the purposes of the Revocation of Paternity Act, a misrepresentation

may be either innocent or fraudulent. *Id*. at 71. A person makes a misrepresentation by merely "making a false representation that deceives another[.]" *Id*.[1]

In this case, intervenor averred that, because of defendant's misrepresentations, he could not have previously known that the child was his biological child. At the best-interest hearing, plaintiff testified that he and defendant had been trying to have a child for about a year when defendant became pregnant. Plaintiff believed he was the child's father, and he did not know that defendant had a sexual relationship with anyone else. Defendant testified that she did not know that plaintiff was not the child's father. Defendant stated that she was only with intervenor once, and thought plaintiff was the child's father because she "did the math[.]" Both defendant and intervenor stated that intervenor asked if he was the father, and that defendant told him he was not.

The child was born in 2011. Intervenor testified that in November or December of 2015, he saw a picture of the child on Facebook and thought that the child looked "just like [him]," but defendant would not tell him whether he was the child's father. Intervenor stated that defendant told intervenor several times that the child was not his. Defendant testified that she did not normally put pictures of her children on Facebook, but after she put a picture of the child on Facebook, intervenor saw it and asked if there was a possibility that the child was his. Defendant stated that she continued to tell intervenor that the child was not his. No party learned that plaintiff was not in fact the child's biological father until after the results of a DNA test in January 2016.

Accordingly, the facts established that defendant made false statements that deceived others. Defendant had sex with intervenor outside her established relationship with plaintiff when she knew that she was not trying to prevent pregnancy. Defendant repeatedly and falsely told intervenor that he was not the child's father. Intervenor was deceived by these statements because he initially believed them, and he did not follow up on his inquiries until years later, when new facts arose that caused him to question his false beliefs. Even then, defendant continued to tell intervenor that he was not the child's father. Defendant's statements, whether innocent or fraudulent, were false and deceived intervenor. We are not definitely and firmly convinced that the lower court made a mistake when it found that defendant made misrepresentations to intervenor.

Regarding plaintiff's argument that the circuit court should have decided the child's best interests before holding a hearing, we decline to address this unpreserved issue. See *Grimes*, 302 Mich App at 537. However, we note that it is difficult to conceive of how the circuit court could determine whether granting relief would or would not be consistent with the child's best interests before it held a hearing on those interests.

---

[1] However, a person does not make a misrepresentation by choosing to sign an acknowledgment of parentage, even if that person knows that he is not the child's biological father. *In re Moiles*, 495 Mich 944, 944; 843 NW2d 220 (2014).

## IV. THE CHILD'S BEST INTERESTS

Plaintiff argues that the circuit court committed clear error when it found that various child custody factors did not weigh in plaintiff's favor, and when it ultimately determined that revoking the affidavit of parentage would be in the child's best interests. We disagree.

As an initial matter, we note that the parties' briefs are not helpful on this point because they solely address the factors found in the Child Custody Act, MCL 722.21 *et seq*. This Court previously held that the circuit court had to consider the child-custody factors of MCL 722.23 to the level of clear and convincing evidence when determining whether to revoke an acknowledgment of paternity, if doing so would alter the child's established custodial environment. *Helton v Beaman*, 304 Mich App 97, 112-113; 850 NW2d 515 (2014), aff'd 497 Mich 1001 (2015) (opinion by O'CONNELL, J.). However, in affirming the result in *Helton*, the Michigan Supreme Court further stated: "[A]n order revoking an acknowledgment of parentage constitutes an order 'setting aside a paternity determination' and, therefore, is subject to a best interests analysis under MCL 722.1443(4)." *Helton*, 497 Mich at 1001. The Court specifically adopted section II of the concurring opinion issued by Judge Kelly of this Court regarding a determination of a child's best interests. *Id*. Section II of the concurring opinion in *Helton* disavowed considering the factors set forth in the Child Custody Act when deciding a child's best interests under the Revocation of Paternity Act. *Helton*, 304 Mich App at 124 (opinion by KELLY, J.) Accordingly, the circuit court erred when it stated that it had to consider the child-custody factors, and the parties' discussion of the child-custody factors are only helpful to the extent that they address the circuit court's findings and considerations under MCL 722.1443(4).

The circuit court's error in considering the child-custody factors is harmless because it also considered the appropriate factors under the Revocation of Paternity Act. MCL 722.1443(4), which contains the best-interest factors for this act, provides:

> A court may refuse to enter an order setting aside a paternity determination, revoking an acknowledgment of parentage, determining that a genetic father is not a child's father, or determining that a child is born out of wedlock if the court finds evidence that the order would not be in the best interests of the child. The court shall state its reasons for refusing to enter an order on the record. The court may consider the following factors:
>
> (a) Whether the presumed father is estopped from denying parentage because of his conduct.
>
> (b) The length of time the presumed father was on notice that he might not be the child's father.
>
> (c) The facts surrounding the presumed father's discovery that he might not be the child's father.
>
> (d) The nature of the relationship between the child and the presumed or alleged father.
>
> (e) The age of the child.

-5-

(f) The harm that may result to the child.

(g) Other factors that may affect the equities arising from the disruption of the father-child relationship.

(h) Any other factor that the court determines appropriate to consider.

The circuit court need only articulate its reasoning regarding these factors if it *refuses* to alter the child's paternity. *Jones*, 320 Mich App at 256. The court must find the child's best interests to the level of the preponderance of the evidence. *Id*. at 257 n 4. Accordingly, the circuit court had the discretion to refuse to revoke plaintiff's paternity if doing so would not be in the child's best interests.

As previously indicated, the circuit court extensively considered the Child Custody Act factors when making its decision, and these factors are not the appropriate factors for the lower court to consider when determining whether to revoke an acknowledgment of paternity. However, this Court will not modify a decision of the trial court on the basis of a harmless error. MCR 2.613(A). The trial court's error is harmless if it is not decisive to the outcome in a case. See *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 529; 730 NW2d 481 (2007). In addition to considering the child-custody factors, the court also considered the revocation of paternity factors. The circuit court referred to its findings on the child-custody factors as its reasoning regarding the potential of harm to the child under MCL 422.1443(4)(f). The court ultimately found that revoking plaintiff's acknowledgment of paternity was in the child's best interests. Because the circuit court found that revoking plaintiff's paternity was in the child's best interests under the revocation of paternity factors, it is not likely that the circuit court's erroneous belief that it was also required to consider the child-custody factors affected the outcome of the case.

Next, we consider plaintiff's specific challenges to the circuit court's findings as they relate to the revocation of paternity factors. We conclude that the circuit court's findings were not clearly erroneous.

First, the court found that the plaintiff's conduct favored plaintiff (MCL 722.1443(4)(a)), and plaintiff does not dispute this finding. Regarding the factors surrounding discovery of the identity of the child's father (MCL 722.1443(4)(b) and (c)), the court found that defendant had failed to inform plaintiff in a timely fashion that he was not the child's genetic father. As previously discussed, defendant misrepresented intervenor's status as the child's father for almost five years. Similarly, defendant did not inform plaintiff that he was not the child's father until February 2016. The circuit court did not make a mistake when it found that plaintiff did not discover that he was not the child's biological father for a lengthy period of time.

Next, the circuit court found that the child had established a loving relationship with plaintiff and that plaintiff had been the child's primary care provider for a significant period (MCL 722.1443(4)(d)). Again, plaintiff does not challenge this finding on appeal.

Regarding the harm that might result to the child (MCL 722.1443(4)(f)), the trial court found that "[t]here are some concerns about the parenting style held by Plaintiff if the Affidavit of Parentage is not revoked." The court stated it had more fully explored its concerns regarding

-6-

the custody best interest factors. Those concerns included plaintiff's capacity to provide the child with guidance, plaintiff's unstable living situation, plaintiff's significant chronic illness, and that the child had witnessed domestic violence while in plaintiff's care.

The record supported the court's findings. Regarding plaintiff's capability to provide the child with guidance, the child's grandmother, who lived on defendant's property, testified that plaintiff did not discipline the child and did not enforce any bedtime or routine with the child or give him consequences. The child's aunt testified that the child had a lot of discipline issues and played rough with other children before he began living with intervenor. The grandmother testified that plaintiff spoke to the child like an adult, and the aunt testified that plaintiff made inappropriate adult comments in front of the child. Further, the grandmother testified that plaintiff let the child play with inappropriate toys, like pennies, one of which got stuck in the child's throat, and that the child told her about shooting a .22 rifle and walking through the woods with a handgun, even though he was only five years old. Plaintiff denied that he left the child unsupervised. This Court defers to the trial court's findings of credibility, and we will not substitute our judgment for that of the trial court. MCR 2.613(C); *Woodington v Shokoohi*, 288 Mich App 352, 358; 792 NW2d 63 (2010). This conflicting testimony created a question of fact for the circuit court to resolve.

Regarding plaintiff's unstable living situation, plaintiff testified that he and the child moved between defendant's home and the homes of plaintiff's sister while defendant's daughter had a personal protection order against him. Plaintiff testified that he had been living at a friend's home for a year, and was looking for a more permanent place. Plaintiff briefly reconciled with defendant and began living with her again in early 2016, but he moved out after about three weeks. There was no dispute regarding plaintiff's frequent moves.

Regarding plaintiff's illness and its effect on his ability to care for the child, the grandmother testified that plaintiff passed out multiple times while caring for the child. Defendant testified that plaintiff did not follow medical instructions and would pass out while caring for the children. Plaintiff testified that he no longer had issues after his pancreas transplant and that he took his medications as directed. Again, the conflicting testimony created a question of fact regarding the effects of plaintiff's health on his ability to parent the child.

Regarding domestic violence, the grandmother testified that plaintiff would shout at defendant's daughter and shove her out the door an hour before the bus arrived, even in the snow, that defendant had grabbed defendant's daughter during an argument and was arrested, that plaintiff and defendant had engaged in domestic violence while the child was present, and that plaintiff had grabbed the child and thrown him onto a bed while angry. Plaintiff was convicted of domestic violence against defendant's daughter. Defendant testified that plaintiff was overbearing with her other children, picking fights and engaging in domestic violence. There was extensive testimony about plaintiff and defendant engaging in domestic violence in front of the child during an incident that resulted in plaintiff locking himself and the child in their

truck.[2] While the parties disputed the specifics, they did not dispute that they were violent in front of the child. The circuit court's findings regarding plaintiff's domestic violence were not clearly erroneous.

Accordingly, the record supported each of the circuit court's findings regarding the harm that might occur to the child as a result of plaintiff's parenting style if it did not revoke the affidavit of parentage. We are not definitely and firmly convinced that it made a mistake when it found that this factor favored revoking the affidavit of parentage.

When making findings on the equities resulting from disrupting the father-child relationship, the court found that the child had bonded well with intervenor and did not appear to have significant separation anxiety with plaintiff or defendant. It found that plaintiff had engaged in troubling actions by involving the child and defendant's children in adult situations, which was inappropriate parenting behavior. It also found that disrupting the child from the father he had known from birth through age five would have a negative impact on the child, but "from the trajectory of how things have gone, since disclosure, do not show a significant likely [sic] of long-term harm."

Regarding the child not having separation anxiety, the child's elementary school teacher testified that the child separates very easily from plaintiff. Defendant testified that the child appeared to simply accept that he had two fathers. Defendant testified that the child had adjusted well to living with intervenor. The child's foster care caseworker testified that intervenor and the child appeared to have an appropriate bond and a normal father/son relationship. The facts supporting the remainder of these findings have been previously discussed. Again, we are not convinced that the lower court made a mistake when it made these findings because evidence in the record supported them.

Ultimately, balancing the revocation of paternity factors, we are not definitely and firmly convinced that the circuit court made a mistake when it found that revoking plaintiff's affidavit of parentage would be in the child's best interests.

Affirmed.


/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra

---

[2] Defendant had also been convicted of domestic violence, though defendant's violence was against someone not involved in the case and was not in front of the children.