GRIMES v VAN HOOK-WILLIAMS

Docket No. 314723. Submitted June 11, 2013, at Detroit. Decided
September 19, 2013, at 9:10 a.m.

Aaron Grimes brought an action in the Macomb Circuit Court
against Shawnita Van Hook-Williams, alleging that he was the
biological father of a child conceived and born while she was
married to Dante Williams and seeking to establish paternity
under the Revocation of Paternity Act, MCL 722.1431 *et seq.*
Grimes requested (1) a DNA test, (2) an order acknowledging him
as the biological father and modifying the child's birth certificate,
(3) joint legal and physical custody of the child, and (4) parenting
time. Van Hook-Williams contended that Grimes lacked standing
to bring an action under the act because he knew that she was
married to Williams at the time of the child's conception and that
she intended to remain married to Williams. The Friend of the
Court referee found that Van Hook-Williams had informed Grimes
when their relationship began that she was married. The referee
recommended that Grimes's request for DNA testing be denied
because under MCL 722.1441(3)(a)(*i*), an alleged father may only
file a paternity action if he did not know or have a reason to know
that the mother was married at the time of conception. Grimes
requested a de novo hearing, arguing that the referee's interpre-
tation of the act violated his constitutional rights. The court,
Kathryn A. Viviano, J., granted Van Hook-Williams summary
disposition, and Grimes appealed.

The Court of Appeals *held*:

1. The circuit court properly granted summary disposition in
favor of Van Hook-Williams because Grimes lacked standing to
commence this action under the Revocation of Paternity Act.
Under MCL 722.1433(4), Williams was presumed to be the child's
father by virtue of his marriage to the child's mother at the time
of the child's conception or birth. Under MCL 722.1433(3), Grimes
was an "alleged father," that is, someone who by his actions could
have fathered the child. MCL 722.1441(3)(a) provides in part that
if a child has a presumed father, a court may determine that the
child was born out of wedlock for purposes of establishing the
child's paternity if the alleged father timely files an action and

(1) the alleged father did not know or have reason to know that the mother was married at the time of conception and (2) the presumed father, the alleged father, and the child's mother at some time mutually and openly acknowledged a biological relationship between the alleged father and the child. There was no genuine factual dispute that Grimes knew or had reason to know that Van Hook-Williams was married to Williams at the time of the child's conception.

2. The standing requirements in the Revocation of Paternity Act are constitutional. The liberties protected by substantive due process under the Fourteenth Amendment and Const 1963, art 1, § 17 include the right to have children and the right to direct their education and upbringing. This fundamental liberty interest, however, has not been extended to a putative father who seeks to establish paternity with respect to a child conceived and born during the mother's marriage to another man. In Michigan, a putative father of a child born in wedlock has no constitutional due-process right to claim paternity under the Revocation of Paternity Act or any other statute and request custody or parenting time, regardless of a biological connection to the child and the existence of a parent-child relationship.

3. Grimes's constitutional right to equal protection under the Fourteenth Amendment and Const 1963, art 1, § 2 was not violated. Under MCL 722.1441(1)(a) and (3)(a), if a child was conceived or born during an extant marriage and the child's mother, presumed father, and alleged father mutually and openly acknowledged a biological relationship between the alleged father and the child, the child's mother or the alleged father may commence an action under certain circumstances seeking to revoke the presumption of paternity that attaches to the presumed father. An alleged father, however, may commence an action under the act only if he did not know or have reason to know that the mother was married at the time of conception. Grimes argued that this statutory distinction between the rights of the mother and the alleged father violated his right to equal protection, contending that because a child's mother and alleged father are similarly situated, they must be afforded equal standing to commence an action under the act. Equal-protection principles require a showing that the challenged legislation or governmental action treats similarly situated individuals differently. Gender-based classifications will be upheld when men and women are not actually similarly situated in the area covered by the legislation in question and the statutory classification is realistically based on the differences in their situations. Fathers and mothers are not similarly

situated with regard to the proof of biological parenthood, and the Legislature's decision to prescribe different statutory standing requirements for a child's mother and alleged father in the Revocation of Paternity Act does not offend equal protection.

Affirmed.

CONSTITUTIONAL LAW — PATERNITY — REVOCATION OF PATERNITY ACT — STANDING — PUTATIVE FATHERS — CHILDREN BORN IN WEDLOCK.

The standing requirements in the Revocation of Paternity Act, which include the requirement that the putative father of a child conceived and born during the mother's marriage to another man show that he did not know or have reason to know that the mother was married at the time of conception, do not deny the putative father due process or equal protection under the law (US Const, Am XIV; Const 1963, art 1, §§ 2 and 17; MCL 722.1431 *et seq.*).

*Ari Kresch* and *Blaney & Condon PLLC* (by *Mary Blaney*) for plaintiff.

*Family Legal Centers of Michigan, PLC* (by *LaVonne Banister Jackson*), for defendant.

Before: JANSEN, P.J., and CAVANAGH and MARKEY, JJ.

JANSEN, P.J. In this paternity action, plaintiff appeals by right the circuit court's order granting summary disposition in favor of defendant and dismissing plaintiff's claims. For the reasons set forth in this opinion, we affirm.

I

At issue in this case is the paternity of defendant's minor child (the child), born November 4, 2011. On September 12, 2012, plaintiff filed a complaint and motion for DNA testing in the circuit court, alleging that he was the biological father of the child. Plaintiff acknowledged that defendant was married to Dante Williams (Williams) "[f]rom the time of conception until the time of the child's birth," but alleged that defendant

and Williams were separated at the time of the child's birth. Plaintiff alleged that he and plaintiff had "held themselves out as a couple" and "discussed plans to marry." In his attached affidavit, plaintiff averred that the child was conceived in April 2011 and that defendant "did not wear a wedding ring or conduct herself as a married woman." Plaintiff sought to establish paternity under the Revocation of Paternity Act, MCL 722.1431 *et seq*. He requested (1) a DNA test to establish paternity,[1] (2) an order acknowledging him as the child's biological father and modifying the child's birth certificate, (3) joint legal and physical custody of the child, and (4) parenting time.

Defendant filed an answer in which she denied that she was ever separated from Williams and denied that she had ever held herself out as plaintiff's girlfriend. She alleged that she and plaintiff merely "had a sporadic, on again, off again relationship" over approximately three years. Defendant contended that plaintiff lacked standing to file an action under the Revocation of Paternity Act because he knew that she was married to Williams at the time of the child's conception and knew that she intended to remain married to Williams.

Plaintiff's motion was referred to a Friend of the Court referee. After reviewing the evidence, the referee found that defendant had informed plaintiff that "she was married at the initiation of their relationship . . . ." Citing MCL 722.1441(3)(a)(*i*), the referee recommended that plaintiff's request for DNA testing be denied because an alleged father may only file an action to establish paternity if he did not know or have a reason to know that the mother was married at the time of

---

[1] Plaintiff attached the report of a private genetic testing company showing a 99.99 percent probability that he was the biological father of the child.

conception. Plaintiff objected to the referee's recommendations and requested a de novo hearing. Among other things, plaintiff argued that the referee's interpretation of the Revocation of Paternity Act violated his constitutional rights "as it relates to the fundamental right to have a meaningful relationship with one's child."

On December 3, 2012, defendant moved for summary disposition, arguing that plaintiff lacked standing to bring an action under the Revocation of Paternity Act because it was beyond factual dispute that plaintiff was aware of her marriage to Williams at the time the child was conceived. Plaintiff admitted that he knew defendant was married at the time he started dating her, just as he had told the referee. However, plaintiff maintained that he assumed that defendant had subsequently obtained a divorce from Williams. He argued that the Legislature "did not intend for fathers to engage in a fact finding mission to determine if the woman they slept with was married on paper when all other indications of a traditional marriage [were] absent." He also argued that a denial of his request to establish paternity would violate his due-process right to "make decisions regarding the care, custody, and control" of his child, as well as his right to equal protection.

At the hearing on defendant's motion for summary disposition, the circuit court remarked from the bench:

> It is undisputed that [plaintiff] was aware that he was engaged in a relationship with a married woman, and that at the time of the conception and birth of the child [defendant] was married to another man. Under the statute, that denies him standing, and . . . it's unequivocal. It says . . . ["]to know or reason to know that the mother [was] married.["] And so, under that argument, I'm finding in favor of the defendant, and that she is entitled to summary disposition.

As to the constitutional arguments, . . . men in the same shoes as [plaintiff] lack standing to bring any kind of action whatsoever if the child was born during the time the woman was married to another man, and there's all sorts of public policy debates that happened, but that's what the statute read, and it was found to be constitutional. I don't find that [plaintiff's] constitutional argument under the new statute has merit. For those reasons, I am granting the motion for summary disposition on the basis that the plaintiff lacks standing, and the case is dismissed.

On January 22, 2013, the circuit court entered an order granting summary disposition in favor of defendant and dismissing plaintiff's claims.

II

We review de novo the circuit court's decision to grant a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). "Summary disposition is proper under MCR 2.116(C)(10) if the affidavits and other documentary evidence show that there is no genuine issue concerning any material fact and that the moving party is entitled to judgment as a matter of law." *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 712; 737 NW2d 179 (2007). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

We review de novo whether a party has been afforded due process, *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013), and whether a party has been afforded equal protection under the law, *USA Cash #1, Inc v Saginaw*, 285 Mich App 262, 277; 776 NW2d 346 (2009). "Matters of constitutional and statutory interpretation and questions concerning the

constitutionality of a statutory provision are also reviewed de novo." *Toll Northville Ltd v Northville Twp*, 480 Mich 6, 10-11; 743 NW2d 902 (2008). "Statutes are presumed constitutional unless the unconstitutionality is clearly apparent." *Id.* at 11.

III

Plaintiff first argues that the circuit court erred by granting summary disposition in favor of defendant because there was insufficient evidence to establish that he knew or had reason to know that defendant was married to Williams at the time the child was conceived. We disagree.

The Revocation of Paternity Act was added by way of 2012 PA 159, and took effect on June 12, 2012. Among other things, the Revocation of Paternity Act "governs actions to determine that a presumed father is not a child's father . . . ." *In re Daniels Estate*, 301 Mich App 450, 458-459; 837 NW2d 1 (2013). Section 11(3)(a) of the Revocation of Paternity Act, MCL 722.1441(3)(a), provides:

> If a child has a presumed father,[2] a court may determine that the child is born out of wedlock for the purpose of establishing the child's paternity if an action is filed by an alleged father[3] and any of the following applies:
>
> (a) All of the following apply:
>
> (*i*) The alleged father did not know or have reason to know that the mother was married at the time of conception.

---

[2] A "presumed father" is "a man who is presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's conception or birth." MCL 722.1433(4).

[3] An "alleged father" is "a man who by his actions could have fathered the child." MCL 722.1433(3).

(*ii*) The presumed father, the alleged father, and the child's mother at some time mutually and openly acknowledged a biological relationship between the alleged father and the child.

(*iii*) The action is filed within 3 years after the child's birth. The requirement that an action be filed within 3 years after the child's birth does not apply to an action filed on or before 1 year after the effective date of this act.

(*iv*) Either the court determines the child's paternity or the child's paternity will be established under the law of this state or another jurisdiction if the child is determined to be born out of wedlock.

The only factual issue that is possibly in dispute in this case is whether plaintiff "did not know or have reason to know that the mother was married at the time of conception." MCL 722.1441(3)(a)(*i*). We conclude that it was beyond genuine factual dispute that plaintiff knew or had reason to know that defendant was married to Williams at the time of the child's conception.

According to plaintiff's own complaint, "[f]rom the time of conception until the time of the child's birth, [defendant] was married to Dante Williams." Plaintiff did allege that defendant and Williams were "separated" and that he believed defendant intended to obtain a divorce from Williams. However, defendant and Williams were never divorced; indeed, defendant apparently remains married to Williams to this day. It is undisputed that defendant never told plaintiff that she had divorced Williams. Nor did plaintiff have any sound reason to believe that defendant had divorced Williams. Even viewing the pleadings, affidavits, and other documentary evidence in the light most favorable to plaintiff, *Kennedy*, 274 Mich App at 712, no reasonable person could have concluded that plaintiff was unaware of defendant's marriage to Williams at the time of the child's conception, see *West*, 469 Mich at 183.

Even assuming arguendo that plaintiff did not actually know that defendant was married to Williams at the time the child was conceived, he had reason to know that defendant remained married to Williams at that time. MCL 722.1441(3)(a)(*i*). Plaintiff fully admits that he was aware of defendant's marriage when he began dating her. In the absence of any proof of an intervening divorce, it was unreasonable for plaintiff to presume that defendant did not remain legally married to Williams. See *Killackey v Killackey*, 156 Mich 127, 133; 120 NW 680 (1909) (noting that, in the absence of evidence to the contrary, the presumption is that married persons have sustained the usual relations of husband and wife from the date of their marriage up to the time that a suit for divorce is filed). Apart from his own subjective, wishful thinking, plaintiff had no reason to believe that defendant had divorced Williams. Thus, even if plaintiff did not actually know that defendant remained married to Williams at the time of the child's conception, he certainly "ha[d] reason to know" that defendant was still married at the time. MCL 722.1441(3)(a)(*i*).

No reasonable person could have concluded that plaintiff "did not know or have reason to know that the mother was married at the time of conception" within the meaning of MCL 722.1441(3)(a)(*i*). Accordingly, plaintiff lacked standing to commence this action under the Revocation of Paternity Act. The circuit court properly granted summary disposition in favor of defendant.

IV

Plaintiff also argues that the statutory standing requirements of the Revocation of Paternity Act are unconstitutional because they violate an alleged

father's due-process and equal-protection rights. For the reasons that follow, we are compelled to conclude that the standing requirements contained in the Revocation of Paternity Act are constitutional.

At common law, a child conceived by or born to a married woman was presumed to be a child of the marriage. *Aichele v Hodge*, 259 Mich App 146, 157; 673 NW2d 452 (2003). Under this presumption, known as Lord Mansfield's Rule, a husband was presumed to be the father of his wife's child, and no declaration of either spouse could be " ' "admitted to bastardize the issue born after marriage." ' " *Id.* at 157-158, quoting *Serafin v Serafin*, 401 Mich 629, 633; 258 NW2d 461 (1977), in turn quoting *Goodright v Moss*, 98 Eng Rep 1257 (1777). Two hundred years later, the Michigan Supreme Court modified Lord Mansfield's Rule, allowing a husband to disclaim paternity while maintaining the "still viable and strong, though rebuttable, presumption of legitimacy." *Serafin*, 401 Mich at 634-636. However, this Court has since observed that the presumption of legitimacy "continues to serve the purpose of promoting order and stability" and "still permeates Michigan law." *Aichele*, 259 Mich App at 158.

A

The United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." US Const, Am XIV, § 1. Similarly, the Michigan Constitution provides that "[n]o person shall be . . . deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17. The due process guarantee of the Michigan Constitution is coextensive with its federal counterpart. *Cummins v Robinson Twp*, 283 Mich App

677, 700-701; 770 NW2d 421 (2009); *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004).

Due process contains both a procedural and a substantive component. *Collins v Harker Heights*, 503 US 115, 125; 112 S Ct 1061; 117 L Ed 2d 261 (1992); *People v Sierb*, 456 Mich 519, 523 n 8; 581 NW2d 219 (1998). "The underlying purpose of substantive due process is to secure the individual from the arbitrary exercise of governmental power." *Sierb*, 456 Mich at 523. The substantive component of the due process guarantee "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v Glucksberg*, 521 US 702, 720; 117 S Ct 2258; 138 L Ed 2d 772 (1997). The United States Supreme Court has long recognized that the "liberty" protected by substantive due process includes, among other things, the right to have children and the right to direct the education and upbringing of one's children. *Id.* Indeed, "the interest of parents in the care, custody, and control of their children" is "perhaps the oldest of the fundamental liberty interests" that the United States Supreme Court has recognized. *Troxel v Granville*, 530 US 57, 65; 120 S Ct 2054; 147 L Ed 2d 49 (2000) (opinion by O'Connor, J.); see also *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982).

However, this fundamental liberty interest has never been extended to a putative father who seeks to establish paternity with respect to a child born during the mother's marriage to another man. "Where . . . the child is born into an extant marital family, the [biological] father's unique opportunity conflicts with the similarly unique opportunity of the husband of the marriage; and it is not unconstitutional for the State to give

categorical preference to the latter." *Michael H v Gerald D*, 491 US 110, 129; 109 S Ct 2333; 105 L Ed 2d 91 (1989). "[T]he current state of the law in Michigan is that a putative father of a child born in wedlock has no constitutional liberty interest relative to commencing a paternity action and requesting custody or parenting time regardless of a biological connection to the child and the presence of a parent-child relationship." *Sinicropi v Mazurek*, 273 Mich App 149, 170; 729 NW2d 256 (2006).

We acknowledge that the Revocation of Paternity Act is relatively new. See 2012 PA 159. Further, we are not insensitive to plaintiff's plight. It is refreshing to see a putative father, such as plaintiff, step forward and express a desire to foster and maintain a parent-child relationship. However, it remains clear, at least at this time, that a putative father in the position of plaintiff who seeks to establish paternity with regard to a child conceived and born during the mother's marriage to another man has no constitutional due-process right to claim paternity, whether under the Revocation of Paternity Act or any other statute. See *Sinicropi*, 273 Mich App at 170.

B

Nor can we conclude that plaintiff's constitutional right to equal protection was violated in this case. The United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." US Const, Am XIV, § 1. Likewise, the Michigan Constitution provides that "[n]o person shall be denied the equal protection of the laws . . . ." Const 1963, art 1, § 2. "Michigan's equal protection provision [is] coextensive with the Equal

Protection Clause of the federal constitution." *Crego v Coleman*, 463 Mich 248, 258; 615 NW2d 218 (2000).

"The essence of the Equal Protection Clauses is that the government not treat persons differently on account of certain, largely innate, characteristics that do not justify disparate treatment." *Id.* "Conversely, the Equal Protection Clauses do not prohibit disparate treatment with respect to individuals on account of other, presumably more genuinely differentiating, characteristics." *Id.* at 258-259.

If a child was conceived or born during an extant marriage, and if the child's mother, presumed father, and alleged father have "mutually and openly acknowledged a biological relationship between the alleged father and the child," the child's mother or alleged father may commence an action under certain circumstances seeking to revoke the presumption of paternity that attaches to the presumed father. MCL 722.1441(1)(a) and (3)(a). As explained previously, an alleged father may commence such an action under the Revocation of Paternity Act only if he "did not know or have reason to know that the mother was married at the time of conception." MCL 722.1441(3)(a)(*i*). For obvious reasons, the statute imposes no such requirement on the child's mother. See MCL 722.1441(1)(a). After all, the child's mother would certainly be aware of her own marriage to the presumed father.

Plaintiff argues that this statutory distinction—requiring that an alleged father "not know or have reason to know that the mother was married at the time of conception," but imposing no similar knowledge requirement on the child's mother—violates his right to equal protection. He contends that because a child's mother and alleged father are similarly situated, they

must be afforded equal standing to commence an action under the Revocation of Paternity Act.

Although we recognize plaintiff's predicament, we cannot conclude that the particular gender-based distinction challenged by plaintiff is unconstitutional. The Legislature's objective was to permit putative fathers who were genuinely unaware of the mother's marital status at the time of conception to sue to establish paternity in certain instances, but also to protect presumed fathers and extant marital families from competing claims to paternity by knowing adulterers. It bears repeating that, not so long ago, no putative father could assert a claim of paternity with respect to a child born during the mother's marriage to another man. It is true that the Michigan Legislature has altered this common-law rule in certain respects, now permitting certain alleged fathers who were genuinely unaware that the mother was married at the time of conception to commence actions under the Revocation of Paternity Act seeking to revoke the presumption of paternity that attaches to the mother's husband. But it is axiomatic that the Legislature may partially confer such rights on alleged fathers in a gradual or step-by-step fashion and need not immediately give alleged fathers the full panoply of rights and privileges that attach to presumed fathers. See *New Orleans v Dukes*, 427 US 297, 303; 96 S Ct 2513; 49 L Ed 2d 511 (1976).

We fully acknowledge that "[l]egislative classifications which distribute benefits and burdens on the basis of gender carry the inherent risk of reinforcing stereotypes about the 'proper place' of women and their need for special protection." *Orr v Orr*, 440 US 268, 283; 99 S Ct 1102; 59 L Ed 2d 306 (1979). Accordingly, "[g]ender-based classification schemes are subject to heightened scrutiny review." *Rose v Stokely*, 258 Mich

App 283, 302; 673 NW2d 413 (2003) (opinion by WHITBECK, C.J.). "Under this level of scrutiny, there are two determinations that must be made. The first question is whether the classification serves an *important* governmental interest. The second question is whether the classification is *substantially* related to the achievement of the important governmental objective." *Dep't of Civil Rights ex rel Forton v Waterford Twp Parks & Recreation Dep't*, 425 Mich 173, 191; 387 NW2d 821 (1986); see also *Craig v Boren*, 429 US 190, 197; 97 S Ct 451; 50 L Ed 2d 397 (1976).

But before the applicable level of scrutiny even becomes an issue, it must first be shown that the challenged legislation or governmental action treats similarly situated individuals differently. "When reviewing the validity of state legislation or other official action that is challenged as denying equal protection, the threshold inquiry is whether [the] plaintiff was treated differently from a similarly situated [individual]." *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010). "Gender-based classifications will be upheld when men and women are not actually similarly situated in the area covered by the legislation in question and the statutory classification is realistically based on the differences in their situations." *In re RFF*, 242 Mich App 188, 210; 617 NW2d 745 (2000); see also *Parham v Hughes*, 441 US 347, 354; 99 S Ct 1742; 60 L Ed 2d 269 (1979).

The United States Supreme Court has held that "[f]athers and mothers are not similarly situated with regard to the proof of biological parenthood. The imposition of a different set of rules for making that legal determination with respect to fathers and mothers is neither surprising nor troublesome from a constitu-

tional perspective." *Nguyen v INS*, 533 US 53, 63; 121 S Ct 2053; 150 L Ed 2d 115 (2001). "Only women may become pregnant, and they suffer disproportionately the profound physical, emotional and psychological consequences of sexual activity." *Michael M v Superior Court of Sonoma Co*, 450 US 464, 471; 101 S Ct 1200; 67 L Ed 2d 437 (1981) (opinion by Rehnquist, J.). "The mother is *the* only necessary actor at all stages of the process, from conception through pregnancy and delivery, including all the physical and medical implications of each stage. Moreover, the mother is usually the child's primary caregiver during the infant's first weeks of life. These are genuinely differentiating characteristics." *Rose*, 258 Mich App at 297. In addition, the identity of the mother is rarely, if ever, in question, and it is the mother who must ultimately decide whether to give birth to the child or terminate the pregnancy. *In re RFF*, 242 Mich App at 210-211.

In contrast, the identity of the child's biological father may well be uncertain. "[T]he father's physical role is limited to the conception of the child. He has no physical role, after conception, in carrying the child to term or in the delivery of the child." *Rose*, 258 Mich App at 297. It is an "uncontestable fact" that the biological father "need not be present at the birth," and even if he is present, "that circumstance is not incontrovertible proof of fatherhood." *Nguyen*, 533 US at 62.

In short, a married mother and an alleged father are not similarly situated for purposes of the Revocation of Paternity Act. Consequently, the Legislature's decision to prescribe different statutory standing requirements for a child's mother and alleged father in the Revocation of Paternity Act does not offend equal protection. See *id.* at 73 (observing that "[t]he difference between men and women in relation to the birth process is a real

one, and the principle of equal protection does not forbid [the Legislature] to address the problem at hand in a manner specific to each gender"). Because married mothers and alleged fathers are not "actually similarly situated" in the area covered by the Revocation of Paternity Act, plaintiff was not denied equal protection in this case. See *In re RFF*, 242 Mich App at 210.

V

We decline to address plaintiff's unpreserved argument that the circuit court's ruling violated the child's constitutional right to "care and filiation." This argument was not raised in and decided by the circuit court. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). At any rate, we note that the United States Supreme Court has never determined "whether a child has a liberty interest, symmetrical with that of her parent, in maintaining her filial relationship." *Michael H*, 491 US at 130. And even if children do have such a constitutional right, it is almost certainly the right to maintain a filial relationship with their *legal parents*. See *id*. at 131. Under the law as it exists in Michigan today, plaintiff is simply not one of the child's legal parents. It is for the Legislature, not this Court, to decide whether the rights of alleged fathers such as plaintiff should be further expanded.

Affirmed. No taxable costs pursuant to MCR 7.219, a public question having been involved.

CAVANAGH and MARKEY, JJ., concurred with JANSEN, P.J.