*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TRAVIS MICHAEL JOHNSON,

Defendant-Appellant.

FOR PUBLICATION
April 8, 2021
9:00 a.m.

No. 351308
Alpena Circuit Court
LC Nos. 17-007577-FH;
       17-007941-FH

Before: SHAPIRO, P.J., and SAWYER and BECKERING, JJ.

BECKERING, J.

At issue in this criminal appeal is the constitutionality of MCL 769.1k(1)(b)(*iii*). MCL 769.1k(1)(b)(*iii*) permits a trial court to impose on a convicted defendant court costs that are reasonably related to the actual costs incurred in processing a criminal case. This statute has been the subject of much scrutiny of late, both in our caselaw and by task forces and organizations seeking to ensure that our judicial system runs fairly and equitably, especially for our most economically vulnerable citizens, and with respect to potential pressures placed on judges by local court funding sources. Defendant Michael Johnson, whose case is before us on delayed leave granted[1], raises a facial challenge to MCL 769.k(1)(b)(*iii*), claiming it deprives criminal defendants of their due-process right to an impartial decisionmaker and violates separation-of-powers principles. While we leave open the question whether a successful as-applied challenge could be made under certain presenting circumstances, in answer to the only legal questions squarely before us, we disagree that the statute is facially unconstitutional.

## I. BASIC FACTS

Defendant pleaded guilty to resisting or obstructing a police officer, MCL 750.81d(1). The trial court placed him on probation and ordered a one-year delayed sentence. At a subsequent probation-violation hearing, defendant pleaded no contest to aggravated domestic violence, second

---

[1] *People v Johnson*, unpublished order of the Court of Appeals, entered December 27, 2019 (Docket No. 351308).

offense, MCL 750.81a(3), and interference with electronic communications, MCL 750.540(5)(a). The trial court revoked defendant's delayed sentence and sentenced him to serve 138 days in jail for resisting or obstructing a police officer and 138 days in jail for interference with electronic communications, with 138 days of jailtime credit, and 13 months to five years' imprisonment for aggravated domestic violence. The court also assessed $600 in court costs in each lower court file, for a total of $1,200.

## II. DISCUSSION

We review de novo constitutional issues and matters involving statutory interpretation. *People v Brown*, 330 Mich App 223, 229; 946 NW2d 852 (2019). A statute challenged on constitutional grounds "is presumed to be constitutional and will be construed as such unless its unconstitutionality is clearly apparent." *People v Solloway*, 316 Mich App 174, 184; 891 NW2d 255 (2016) (quotation marks and citation omitted).

"A constitutional challenge to the validity of a statute can be brought in one of two ways: by either a facial challenge or an as-applied challenge." *In re Forfeiture of 2000 GMC Denali & Contents,* 316 Mich App 562, 569; 892 NW2d 388 (2016). A facial challenge attacks the statute itself, and requires the challenger to " 'establish that no set of circumstances exists under which the act would be valid. The fact that the . . . [a]ct might operate unconstitutionally under some conceivable set of circumstances is insufficient.' " *Council of Organizations & Others for Ed About Parochiaid, Inc v Governor*, 455 Mich 557, 568; 566 NW2d 208 (1997), quoting *United States v Salerno*, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987). An as-applied challenge alleges " 'a present infringement or denial of a specific right or of a particular injury in process of actual execution' of government action." *Bonner v City of Brighton*, 495 Mich 209, 223 n 27; 848 NW2d 380 (2014), quoting *Village of Euclid v Ambler Realty Co*, 272 US 365, 395; 47 S Ct 114; 71 L Ed 303 (1926).

Defendant does not argue that the trial judge in his case acted impartially when deciding to impose court costs under MCL 769.1k(1)(b)(*iii*). Rather, the thrust of his argument is that MCL 769.1k(1)(b)(*iii*) operates in the state of Michigan to deprive all criminal defendants of their due-process right to appear before an impartial decisionmaker because the statute incentivizes all judges to convict criminal defendants and impose court costs to raise revenue for the courts. This argument sets forth a facial challenge to the constitutionality of the statute at issue.[2] Accordingly,

---

[2] The Detroit Justice Center (DJC) filed a brief as amicus curiae of defendant, attaching a copy of a pamphlet entitled "Highway Robbery: How Metro Detroit Cops and Courts Steer Segregation and Drive Incarceration." Although the DJC asserts that the statute at issue is unconstitutional because it deprives defendants of an unbiased decisionmaker, the gravamen of its argument is that all fines, fees, and costs assessed for minor traffic offenses by Michigan courts in general, and Detroit courts in particular, have a disproportionate impact on poor people and on people of color. The DJC's argument goes more to an as-applied challenge than to a facial challenge.

defendant "must establish that no set of circumstances exists under which the act would be valid." *Council of Organizations & Others*, 455 Mich at 568 (quotation marks and citation omitted).

The United States Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law." US Const, Am XIV.[3] "It is axiomatic that a fair trial in a fair tribunal is a basic requirement of due process." *Caperton v AT Massey Coal Co, Inc*, 556 US 868, 876; 129 S Ct 2252, 2259; 173 L Ed 2d 1208 (2009) (quotation marks, alteration, and citation omitted). "The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v Jerrico, Inc*, 446 US 238, 242; 100 S Ct 1610, 1613; 64 L Ed 2d 182 (1980). Among other things,

> [t]his requirement of neutrality in adjudicative proceedings . . . preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done," *Joint Anti-Fascist Committee v. McGrath*, 341 US 123, 172; 71 S Ct 624, 649; 95 L Ed 817 (1951) (FRANKFURTER, J., concurring), by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him. [*Id*.]

At the time defendant was sentenced, MCL 769.1k(1) provided, in relevant part:

> If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty, both of the following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred pursuant to statute or sentencing is delayed pursuant to statute:
>
> (a) The court shall impose the minimum state costs as set forth in [MCL 769.1j].
>
> (b) The court may impose any or all of the following:
>
> (*i*) Any fine authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

---

[3] The Michigan Constitution provides, "No person shall be . . . deprived of life, liberty, or property without due process of law." Const 1963, art I, sec 17. Defendant does not state whether his argument is based on violation of due-process guarantees provided by the federal or the state constitution. This Court has previously held that the "due process guarantee of the Michigan Constitution is coextensive with its federal counterpart." *Grimes v Van Hook-Williams*, 302 Mich App 521, 530; 839 NW2d 237 (2013). In his due-process argument, defendant cites caselaw applying only the federal constitution. Thus, we presume that defendant bases his challenge on an alleged violation of the federal constitution and will analyze his argument accordingly.

(*ii*) Any cost authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

(*iii*) Until 36 months after the date the amendatory act that added subsection (7) is enacted into law,[4] *any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:*

(A) Salaries and benefits for relevant court personnel.

(B) Goods and services necessary for the operation of the court.

(C) Necessary expenses for the operation and maintenance of court buildings and facilities. [Emphasis added.]

Defendant contends in his brief to this Court that MCL 769.1k(1)(b)(*iii*) "provides a financial incentive for trial judges to see that criminal defendants are convicted so they can then order the defendant to pay costs, which can then be used to fund the courts in which the judges preside." He further contends that this funding scheme deprives criminal defendants of their right to appear before an impartial judge and violates separation-of-powers principles by preventing "the judicial branch from carrying out its constitutionally assigned function of maintaining impartiality in criminal trials and in maintaining and enforcing rules requiring that trial judges remain impartial in criminal proceedings." Defendant suggests that, as a result of this arrangement, "all trial court judges lack neutrality in criminal proceedings, no trial court judge can accomplish his or her constitutionally assigned function of overseeing criminal trials."

As an initial matter, we question whether the "financial incentives for trial judges to see that defendants are convicted" are operative in cases such as this one, where defendants choose to plead guilty and do not argue that their pleas were improperly entered, and where the costs imposed meet statutory requirements. Next, the degree or kind of financial interest that "is sufficient to disqualify a judge from sitting cannot be defined with precision." *Caperton*, 556 US at 879 (quotation marks and citation omitted). However, two seminal decisions from the United States Supreme Court identify circumstances relevant to the question of whether the financial interests of a trial court might raise due-process concerns.

The first of these two cases is *Tumey v Ohio*, 273 US 510; 47 S Ct 437; 71 L Ed 749 (1927), in which the Supreme Court held that subjecting the liberty and property of a defendant to a court wherein the judge had a "personal, direct, substantial pecuniary interest" in a conviction constituted denial of due process. *Tumey*, 273 US at 523. In *Tumey*, state law and local ordinances allowed the mayor of the village of North College Hill, Ohio, to try cases involving violations of the state's Prohibition Act and to fine those convicted. *Id*. at 516-519. Half of the money collected from such fines went into the village's treasury. *Id*. at 518. The mayor also received $12 for each

---

[4] The "sunset" date in MCL 769.1k(1)(b)(*iii*) has been periodically amended and is currently October 1, 2022. See 2020 PA 151.

conviction, "in addition to his regular salary, as compensation for hearing such cases." *Id*. at 519, 523. The mayor did not receive this supplemental income from acquittals. *Id*. at 523. In addition to his judicial authority, the mayor also exercised executive authority for the village, including responsibility for the village's financial health. *Id*. at 533. The mayor's judicial role gave him a "direct, personal, substantial pecuniary interest" in convicting defendants, *id*. at 523, and his executive role gave him a strong motive to help the finances of his village through convictions and heavy fines, *id*. at 533. The United States Supreme Court held that this arrangement denied defendants due process of law, and it established the following general rule:

> Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law. [*Id*. at 532.]

In *Tumey*, the combination of judicial and executive authority in the mayor, which allowed him to generate, benefit personally from, and administer the revenue collected from assessments he imposed when sitting as a judge, "offer[ed] a possible temptation" to partiality and the attendant denial of due process. *Id*.

The second seminal case is *Dugan v Ohio*, 277 US 61, 65; 48 S Ct 439; 72 L Ed 784 (1928), wherein the Supreme Court held that due process concerns did not arise because of the remoteness of a mayor's connection to the funds he generated when sitting as a judge. Like the mayor in *Tumey*, the mayor in *Dugan* could also judge cases involving violations of the Prohibition Act and fine those found guilty. The fines the *Dugan* mayor imposed went into a general fund, out of which the mayor's salary was paid. *Dugan*, 277 US at 62-63. Unlike the mayor in *Tumey*, however, the mayor in *Dugan* received no supplemental income from convictions. *Id*. at 65. Further, as one of five commissioners who, along with the city manager, exercised the city's executive power, the mayor was only remotely responsible for the executive and financial policy of the city. See *id*. at 63. The Supreme Court determined that the *Dugan* mayor's relation under the city's charter "to the fund contributed to by his fines as judge, or to the executive or financial policy of the city, [was] remote[,]" and held that the arrangement in *Dugan* did not violate the right of criminal defendants to due process. *Id*. at 65.

In *Ward v Village of Monroeville, Ohio*, 409 US 57; 93 S Ct 80; 34 L Ed 2d 267 (1972), the Supreme Court appears to have extended *Tumey* to situations where the personal benefit from court assessments appears more indirect than direct. The defendant in *Ward* had to stand trial for a traffic offense in the mayor's court. *Ward*, 409 US at 57. In addition to his judicial role, the mayor had wide executive powers. Among other things, he was president of the village council, had general overall supervision of village affairs, and accounted annually to the village council for the village's finances. *Id*. at 58. The court assessments—fines, forfeitures, costs, and fees— imposed in the mayor's court provided between 37% and 51% of the village's income during the years surveyed. *Id*. The Supreme Court determined that *Tumey* governed resolution of the case, reasoning that the limits of the principle set forth in *Tumey* were not defined by the fact that the *Tumey* mayor shared directly in the fees and costs he generated in this judicial role. *Id*. at 60. Rather, "the test is whether the mayor's situation is one 'which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the

accused . . . .' " *Id*., quoting *Tumey*, 273 US at 532. The Court concluded that " 'possible temptation' may also exist when the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court." *Id*.

Two recent decisions by the Fifth Circuit Court of Appeals provide examples of circumstances deemed to fall within the ambit of *Ward*.[5] In *Caliste v Cantrell*, 937 F3d 525 (CA 5, 2019), the defendant, Judge Cantrell, presided over the initial appearance of all defendants in the Orleans Parish Criminal District Court (OPCDC). *Id*. at 526. He required about half the defendants who appeared before him to secure a commercial bond as a condition for their pretrial release. *Id*. Under Louisiana law, 1.8% of the bond's surety value was deposited in the court's Judicial Expense Fund (JEF), a fund administered by the thirteen judges on the district court and used to pay the salaries of court staff, office supplies, travel, and other costs. *Id*. In recent years, the covered expenses had totaled more than a quarter of a million dollars for each of the 13 judges of the court, and the bond fees contributed approximately 20% to 25% of that amount. *Id*.

In holding that this "uncommon arrangement violate[d] due process," *id*. at 532, the Fifth Circuit concluded that Judge Cantrell was "more like the *Ward* mayor than the *Dugan* mayor" because he had a "a direct and personal interest in the fiscal health of the public institution that benefits from the fees his court generates and that he also helps allocate." *Id*. at 531. Although the fees in *Caliste* accounted for only 20 to 25% of the JEF, the Court deemed this percentage "sizeable enough that it [made] a meaningful difference in the staffing and supplies judges receive." *Id*. Thus, Judge Cantrell's dual role of generator and administrator of court fees, and the benefit he derived from use of the fees, had the potential to make him "partisan to maintain the high level of contribution" from the bond fees. *Id*. at 531-532, quoting *Ward*, 409 US at 60; 93 S Ct 80. Similarly, in *Cain v White,* 937 F3d 446, 454 (CA 5, 2019), cert den 140 S Ct 1120; 206 L Ed 2d 187 (2020), the Fifth Circuit held that, where the judges had exclusive authority over how the JEF is spent, had to account for the OPCDC budget to the New Orleans City Council and New Orleans Mayor, and the fines and fees made up a significant portion of the judges' annual budget, the situation fell within the ambit of *Ward*. The Appeals Court emphasized that it based its conclusion on "the totality of this situation, not any individual piece." *Id*.

Turning to the present case, defendant contends that MCL 769.1k(1)(b)(*iii*) encroaches on the judiciary's impartiality by creating financial incentives and pressure for judges to ensure that criminal defendants are convicted and assessed court costs so as to fund the trial courts. Defendant contends that, under this funding scheme, "[t]he more money the judge orders the defendant to pay the more money she will generate for the county, and ultimately, for the court where she presides." We recently addressed similar arguments in *People v Alexander*, unpublished per curiam opinion of the Court of Appeals, issued May 14, 2020 (Docket No. 348593). Although we are not bound

---

[5] The decisions of lower federal courts are not binding on this Court, but may be considered persuasive. *People v Walker*, 328 Mich App 429, 444-45; 938 NW2d 31 (2019) (quotation marks and citation omitted).

by the decision in *Alexander*, MCR 7.215(C)(1), we do find *Alexander*'s analysis and application persuasive.

To the extent defendant suggests that a trial court's discretion to impose costs under MCL 769.1k(1)(b)(*iii*) is unconstrained, he is mistaken. As this Court explained in *Alexander*:

> [A] trial court does not have unfettered discretion with respect to the amount of costs to impose under this provision because the costs imposed must be "reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case," MCL 769.1k(1)(b)(*iii*); see also *People v Konopka (On Remand)*, 309 Mich App 345, 350-351; 869 NW2d 651 (2015), and there must be a factual basis demonstrating that the imposed costs are reasonably related to the costs incurred by the trial court, *Konopka*, 309 Mich App at 359-360. Hence, contrary to defendant's argument, MCL 769.1k(1)(b)(*iii*) does not provide the trial court with the authority to increase the costs imposed on criminal defendants as a means for generating more revenue. [*Alexander*, unpub op at 14.]

Thus, contrary to the implication of defendant's argument that trial courts may impose any amount of costs they deem necessary to generate revenue, the costs imposed by a trial court must have a factual basis and must be reasonably related to the actual costs incurred by the court.

Further, defendant provides no evidence for his assumption that there is a direct correspondence between the court costs imposed and the money the cost-imposing court receives. Undeniably, "MCL 769.1k(1)(b)(*iii*) is a revenue-generating statute." *People v Cameron*, 319 Mich App 215, 224; 900 NW2d 658, 665 (2017). However, defendant has failed to show that MCL 769.1k(1)(b)(*iii*) also authorizes courts to administer the revenue so collected. As this Court explained in *Alexander*, "MCL 769.1k(1)(b)(*iii*)(A)-(C) provide guidance for establishing the requisite factual basis, but these provisions do not indicate where the money flows after the costs have been imposed on and paid by a convicted defendant." *Alexander*, unpub op at 14. Defendant has not established "the type of direct nexus between a judge's compensation and any fees or costs imposed that was present in *Tumey*." *Id*. Indeed, Michigan's Constitution provides that " '[n]o judge or justice of any court of this state shall be paid from the fees of his office nor shall the amount of his salary be measured by fees, other moneys received or the amount of judicial activity of his office.' " *Id*., quoting Const 1963, art 6, § 17. Nor has defendant provided any evidence that "the costs imposed under MCL 769.1k(1)(b)(*iii*) are funneled into a special or specific fund to be administered by judges, analogous to the Judicial Expense Fund at issue in *Caliste* and *Cain*." *Id*. In other words, defendant has not shown that the nexus between the courts and the costs they impose under the statute at issue more closely resembles the circumstances in *Tumey*, *Ward*, *Caliste*, or *Cain*, than in *Dugan*, where the entity exercising the judicial role benefitted from a portion of the revenue generated by court assessments, but did not have control over administration of the revenue.

Defendant points to observations in Michigan Supreme Court Chief Justice McCormack's concurrence in *Cameron* to support his argument that the pressure put on judges to generate revenue by assessing costs pursuant MCL 769.1k(1)(b)(*iii*) violates the right of criminal defendants to an impartial judge. *Cameron*, 504 Mich at 927. The Michigan District Judges Association (MDJA) argued in an amicus curiae brief filed in *Cameron* that MCL 769.1k(1)(b)(*iii*)

violated the Fourteenth Amendment, and also submitted letters that provided anecdotal evidence of the pressure some district judges were under to ensure that their courts were well-funded. Opining that the MDJA might be right, Chief Justice McCormack stated:

> No matter how neutral and detached a judge may be, the burden of taxing criminal defendants to finance the operations of his court, coupled with the intense pressures from local funding units (and perhaps even from the electorate), could create at least the appearance of impropriety. Assigning judges to play tax collector erodes confidence in the judiciary and may seriously jeopardize a defendant's right to a neutral and detached magistrate.

The letters to which Chief Justice McCormack refers are not part of the record in this case. Even if they were, they would not affect the outcome of this case. While we agree that use of the funds generated pursuant to MCL 769.1k(1)(b)(*iii*) to finance the operations of the sentencing judge's court, coupled with intense pressure placed on that court by its local funding unit, could create at a minimum an appearance of impropriety, anecdotal evidence from a few judges fails to establish that "no set of circumstances exists under which [MCL 769.1k(1)(b)(*iii*)] would be valid. The fact that the … [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient."[6] *Council of Orgs*, 455 Mich at 568 (quotation marks and citation omitted).[7] Rather, such pressure calls into question the conduct of the local funding units, as MCL 769.1k(1)(b)(*iii*), on its face, does not address how the funds are to be utilized.

Finally, defendant argues that MCL 769.1k(1)(b)(*iii*) is unconstitutional because, by enacting it, the Legislature "effectively created a funding system for our courts that interferes with

---

[6] We acknowledge the impassioned dissent of our colleague, and to the extent that it rests on anecdotal evidence submitted in *Cameron*, we, again, agree with Justice McCormack's assessment of that material. There seems to be a growing consensus that the court-financing scheme requires legislative reform. Defendant attached to his appellate brief State Court Administrative Office data on all court costs imposed and collected under MCL 769.1k from 2016 to 2018, not just those imposed and collected under authority of MCL 769.1k(1)(b)(*iii*), and a copy of the April 8, 2019 interim report of the Trial Court Funding Commission, which makes a very strong case for amendment of Michigan's court-funding scheme, but does not affect our analysis of defendant's argument that the statute at issue is unconstitutional on its face. Like Justice McCormack, however, we agree that the Trial Court Funding Commission's Interim Report shows great potential to reduce the pressure some judges have experienced, and we likewise urge the Legislature to take its recommendations seriously.

[7] Like the panel that decided *Alexander*, "[w]e leave open the question whether a successful as-applied challenge could be made against the constitutionality of this statute, as there appear to be general grounds for concern related to the constitutionality of this statute regarding the manner of funding trial courts in Michigan and pressures placed by some local funding units on district court judges to ensure their courts are well-funded." *Alexander*, unpub op at 7 n 8 (quotation marks and citation omitted).

the judiciary's obligation to maintain impartiality in criminal proceedings and its authority to maintain and administer rules regulating trial judges' impartiality."

"[I]n determining whether [an] Act disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents [one] [b]ranch from accomplishing its constitutionally assigned functions." *Nixon v Adm'r of Gen Servs*, 433 US 425, 443; 97 S Ct 2777; 53 L Ed 2d 867 (1977). The gravamen of defendant's argument is that MCL 769.1k(1)(b)(*iii*) prevents the judicial branch "from accomplishing its constitutionally assigned functions," *id*., by rendering it impossible for any trial judge in the State to operate in accordance with his or her oath of office and the constitutional mandates of due process. However, as already explained, and as a panel of this Court explained in *Alexander*, "defendant has not shown that this statute creates a situation where there exists no set of circumstances under which a judge in this state is impartial[,]" nor has he shown "that all trial judges must be disqualified" because the statute "creates financial interest in the judiciary to cause them to ignore their constitutional mandates." *Alexander*, unpub op at 15. Further, although MCL 769.1k(1)(b)(*iii*) generates revenue, *Cameron*, 319 Mich App at 224, nothing in the plain language of the statute "directs the flow of money or creates a funding system for the trial courts . . . ." *Alexander*, unpub op at 15. For these reasons, defendant's separation-of-powers argument does not establish that the Legislature has made it impossible for trial courts to fulfill their constitutional mandates or that MCL 769.1k(1)(b)(*iii*) is facially unconstitutional. *Id*.

Affirmed.


/s/ Jane M. Beckering
/s/ David H. Sawyer