*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARCIN WOLSKI,

        Plaintiff-Appellant,

v

LAUREN CARTWRIGHT and IAN CARTWRIGHT,

        Defendants-Appellees.

UNPUBLISHED
December 23, 2025
11:55 AM

No. 375281
Oakland Circuit Court
LC No. 2024-527715-DP

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

PER CURIAM.

Plaintiff, Marcin Wolski, appeals as of right the order denying his motion for a declaratory judgment and dismissing his case. We affirm.

This case arises out of an extra-marital relationship between plaintiff and defendant Lauren Cartwright. At all times relevant to this proceeding, defendants Lauren and Ian Cartwright were married and had an open marriage in which both of them could have sexual relationships with other people. Plaintiff and Lauren began a relationship in spring 2018. According to plaintiff's complaint, Lauren told plaintiff that "she was separated from her husband and that she was getting a divorce." The complaint does not allege that Lauren stated she was divorced.

In November 2022, Lauren informed plaintiff that she was pregnant. Plaintiff told her he was sterile, so Lauren did not think he could be the father. Lauren gave birth to JC in June 2023. Ian signed JC's birth certificate. According to plaintiff, he wanted to sign an affidavit of parentage but Lauren refused. In September 2023, a DNA test was performed, which found there was a 99.9% probability that plaintiff was JC's father.

On May 24, 2024, plaintiff brought a complaint alleging that he did not know Lauren was still married at the time of JC's conception. Plaintiff argued that the trial court should find that JC was born out of wedlock and enter an order of filiation establishing that plaintiff is JC's father under the Revocation of Paternity Act (RPA), MCL 722.1431 *et seq*. The trial court entered an order and opinion denying plaintiff's motion for declaratory judgment and dismissing his case for lack of standing. This appeal followed.

-1-

# I. STANDING

Plaintiff argues that the trial court erred in finding that he did not have standing under the RPA. We disagree.

## A. STANDARD OF REVIEW

The RPA does not provide a specific standard of review. *Parks v Parks*, 304 Mich App 232, 237; 850 NW2d 595 (2014). Any factual findings by the trial court are reviewed for clear error, which occurs when this Court is "definitely and firmly convinced" that the trial court erred. *Id*. (citation and quotation marks omitted). Any issues of statutory interpretation or application are reviewed de novo. *Glaubius v Glaubius*, 306 Mich App 157, 164; 855 NW2d 221 (2014). Issues of standing are reviewed de novo. *Groves v Dep't of Corrections*, 295 Mich App 1, 4; 811 NW2d 563 (2011).

## B. DISCUSSION

The focus of a standing determination is on whether a litigant is the correct party to seek adjudication, rather than if their particular claim is justiciable. *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010). "[A] litigant has standing whenever there is a legal cause of action." *Id*. at 372. They must also have sustained an actual injury. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 554; 904 NW2d 192 (2017).

"Among other things, the [RPA] governs actions to determine that a presumed father is not a child's father . . . ." *Grimes v Van Hook-Williams*, 302 Mich App 521, 527; 839 NW2d 237 (2013) (citation and quotation marks omitted). "The RPA allows the trial court to (1) revoke an acknowledgment of parentage, (2) set aside an order of filiation, (3) determine that a child was born out of wedlock, or (4) make a determination of paternity and enter an order of filiation." *Parks*, 304 Mich App at 238 (citation and quotation marks omitted). The presumed father under the RPA is the "man who is presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's conception or birth." MCL 722.1433(4). An alleged father under the RPA is "a man who by his actions could have fathered the child." MCL 722.1433(3). As to a child born out of wedlock, as here, MCL 722.1441(3) establishes that:

> If a child has a presumed father, a court may determine that the child is born out of wedlock for the purpose of establishing the child's paternity if an action is filed by an alleged father and any of the following applies:
>
> (a) All of the following apply:
>
> (*i*) The alleged father did not know or have reason to know that the mother was married at the time of conception.
>
> (*ii*) The presumed parent, the alleged father, and the child's mother at some time mutually and openly acknowledged a biological relationship between the alleged father and the child.

(*iii*) The action is filed within 3 years after the child's birth. The requirement that an action be filed within 3 years after the child's birth does not apply to an action filed on or before 1 year after the effective date of this act.

(*iv*) Either the court determines the child's parentage or the child's parentage will be established under the law of this state or another jurisdiction if the child is determined to be born out of wedlock.

It is agreed that Ian is JC's presumed father and plaintiff is his alleged father. The parties do not dispute that plaintiff's action was filed within 3 years of JC's birth. Defendants and plaintiff have mutually and openly acknowledged that plaintiff is JC's biological father, which was verified by DNA testing. The only factual dispute is whether plaintiff "did not know or have reason to know" that Lauren was married when JC was conceived. MCL 722.1441(3)(a)(*i*).

There was no genuine factual dispute as to whether defendants were married when JC was conceived. In his complaint, plaintiff alleged that defendants were separated and that Lauren planned on getting a divorce from Ian. Lauren refuted that in her deposition. There is no indication on this record, or allegation in the complaint, that defendants ever got divorced. Plaintiff provided his own affidavit and affidavits of his mother, brother, and sister-in-law. The affidavits provided by plaintiff's family are essentially the same and state that Lauren introduced herself as plaintiff's girlfriend, with no mention of whether she affirmatively stated she was divorced. The affidavits all say that "Lauren manipulated [plaintiff] into believing she was getting divorced from her husband, became pregnant with [plaintiff's] son, and at some point before the child was born reconciled with her husband without telling [plaintiff]." There is no mention of her actually getting divorced. While these affidavits show that plaintiff and Lauren dated, they do not prove she was divorced. As acknowledged by plaintiff in his complaint, Lauren and plaintiff dated while she was married. Although plaintiff and his family may have believed Lauren was going to get divorced, this does not equate to her actually getting divorced.

In his brief on appeal, plaintiff cites to *Burnett v Ahola*, unpublished opinion of the Court of Appeals, issued May 26, 2016 (Docket No. 330311). As a preliminary matter, we note that unpublished opinions are not binding on us, though they may be considered for their persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017). In *Burnett*, this Court held that the trial court did not err when entering an order of filiation under MCL 722.1441(3)(a) because the mother affirmatively told the alleged father that her divorce had been finalized when it had not been. *Burnett*, unpub op at 2, 5. This Court relied on *Sprenger v Bickle*, 307 Mich App 411, 418-419; 861 NW2d 52 (2014), for the explanation that "[t]he mother's marital status must be more than merely doubtful to the alleged father; he must actually have been unaware that she was married and without good reason to believe she was in fact married." There is no evidence in the instant case that Lauren told plaintiff that her divorce had been finalized. Further, there is no evidence Lauren and plaintiff discussed Lauren's relationship status as changing after acknowledging she was married and considering divorce. There was no evidence that defendants proceeded with divorce or told plaintiff they had, so it was unreasonable for plaintiff to think otherwise. *Grimes*, 302 Mich App at 529 ("In the absence of any proof of an intervening divorce, it was unreasonable for plaintiff to presume that defendant did not remain legally married to Williams."). Plaintiff relied heavily on the fact that Lauren introduced herself as his girlfriend, but also acknowledged that Lauren and Ian had an open marriage. Put differently, and again to

borrow from *Sprenger*, "the child here was conceived during the marriage, plaintiff was fully aware that defendant was still married . . . ." *Sprenger*, 307 Mich App at 419; MCL 722.1441(3)(a)(*i*). Therefore, plaintiff did not have standing under the RPA, and the trial court did not err in dismissing plaintiff's claim.

## II. STATUTORY INTERPRETATION

Plaintiff argues that the presumption of paternity should not apply because defendants have an open marriage. We disagree.

### A. STANDARD OF REVIEW

We review issues of statutory interpretation de novo. *Parks*, 304 Mich App at 237. "This Court gives the words of the statutes their plain and ordinary meaning and will look outside the statutory language only if it is ambiguous." *Id*. (citation and quotation marks omitted). If the statutory language is unambiguous, no judicial construction is permitted. *Id*.

### B. DISCUSSION

As discussed above, one of the requirements for an alleged father to establish paternity under the RPA is that he "did not know or have reason to know that the mother was married at the time of conception." MCL 722.1441(3)(a)(*i*). If a term is undefined by a statute, this Court interprets it based on its plain and ordinary meaning. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002).

Plaintiff argues that the RPA does not apply to open marriages. The RPA does not define marriage. The dictionary definition of marriage is "the state of being united as spouses in a consensual and contractual relationship recognized by law." *Merriam-Webster's Collegiate Dictionary* (11th ed). The RPA also contains no definition or mention of an open marriage. An open marriage is defined as "a marriage in which the partners agree to let each other have sexual partners outside the marriage." *Merriam-Webster's Collegiate Dictionary* (11th ed).

The statutory language of the RPA is unambiguous. What is relevant is whether an alleged father knew or had reason to know that the mother was married at the time of conception. MCL 722.1441(3)(a)(*i*). Because marriage is not defined by the RPA, the common definition of marriage as a contractual relationship applies. *Koontz*, 466 Mich at 312. The parties' agreement to have other sexual partners does not impact their contract. There is no language in the RPA that limits a marriage to one where both parties are monogamous. Because the RPA deals in part with establishing parentage when there is both an alleged father and a presumed father, it would be illogical for it to declare any marriage where someone had an extramarital relationship to be legally void. Simply put, an open marriage is a marriage. Therefore, the trial court did not err in applying the RPA to this case.

We affirm.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ Adrienne N. Young

-4-